UNITED STATES DISTRICT COURT
for the
Middle District of Florida – Orlando Division

| | | |
|---|---|---|
| GREGORY McCORMICK,<br>*Plaintiff*,<br><br>v.<br><br>STETSON UNIVERSITY, INC.;<br>HALIFAX HEALTH MEDICAL CENTER;<br>LANE JENNINGS, JR., in his individual capacity; ANNE CONWAY, in her individual capacity; KAREN McMILLAN, in her individual capacity; THOMAS DELGADO, in his individual capacity,<br>*Defendants*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.<br>______________________<br><br>**CIVIL COMPLAINT**<br>**JURY DEMANDED** |

**CIVIL COMPLAINT**

Plaintiff GREGORY McCORMICK, by way of Complaint against the Defendants, STETSON UNIVERSITY, INC.; HALIFAX HEALTH MEDICAL CENTER; LANE JENNINGS, JR., in his individual capacity; ANNE CONWAY, in her individual capacity; KAREN McMILLAN, in her individual capacity; THOMAS DELGADO, in his individual capacity, hereby states as follows:

**INTRODUCTION**

1. This civil action arises from a pervasive pattern of sexual harassment, disability discrimination, retaliation, and institutional

misconduct committed by Defendants Stetson University and Halifax Health during Plaintiff's graduate-level counseling practicum. The misconduct was not isolated or accidental; it reflects systemic failures by both institutions to meet their legal obligations to protect students, respond to reports of abuse, and provide an educational environment free from discrimination and retaliation.

2. While assigned to Halifax Health through a Stetson-approved clinical placement, Plaintiff was subjected to unwanted physical contact, sexually suggestive behavior, coercive interactions, and boundary-violating conduct by Halifax employee Lane Jennings Jr., who lacked the credentials, authorization, or supervisory authority required under the practicum contract, accreditation standards, or state law. Jennings' conduct created a hostile, unsafe, and sexually charged environment that no student should be forced to endure.

3. After Plaintiff reported this misconduct, both Halifax and Stetson failed to take any meaningful investigative or protective action. Instead, each institution responded with retaliation, removing Plaintiff from his practicum, obstructing his academic progress, revoking his HRSA grant, imposing punitive and unjustified academic sanctions, and disregarding his documented disabilities and mental-health needs. Rather than addressing the misconduct, Defendants targeted the student who reported it.

4. As a direct and proximate result of Defendants' actions and omissions, Plaintiff suffered severe emotional, psychological, academic, and financial harm, including an exacerbation of his diagnosed Post-Traumatic Stress Disorder (PTSD), loss of educational and professional opportunities, delayed graduation, and significant financial losses.

5. Plaintiff seeks compensatory damages, punitive damages where permitted by law, and injunctive relief to remedy ongoing harm, correct the institutional failures that contributed to his injuries, and prevent future students from being subjected to similar misconduct.

## JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States, including Title IX of the Education Amendments of 1972, Section 504 of the Rehabilitation Act, the Americans with Disabilities Act, and 42 U.S.C. § 1983. These federal statutes independently confer federal question jurisdiction.

7. This Court has supplemental jurisdiction over Plaintiff's related state-law claims under 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy as the federal claims, arising from a common nucleus of operative facts involving Plaintiff's practicum placement, Defendants' responses to his reports of misconduct, and the resulting harm.

8. Venue is proper in the Middle District of Florida under 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in Volusia County, and all Defendants reside in, are headquartered in, or conduct substantial business within this District.

## THE PARTIES

9. At all times relevant herein, Plaintiff GREGORY McCORMICK is an adult resident citizen of Volusia County, Florida, with a residential address of 145 Scenic Magnolia Drive, Deland, Florida, USA

10. At all times relevant herein, Defendant STETSON UNIVERSITY, INC. ("Stetson") was and is a private university receiving federal financial assistance and therefore subject to Title IX, Section 504 of the Rehabilitation Act, and the Americans with Disabilities Act. Stetson maintains its principal campus and administrative offices at 421 N. Woodland Boulevard, DeLand, Florida 32723, where it may be served.

11. At all times relevant, Defendant HALIFAX HEALTH MEDICAL CENTER ("Halifax Health") was and is a public hospital system organized under Florida law and a state actor for purposes of 42 U.S.C. § 1983. Halifax maintains its principal place of business at 303 North Clyde Morris Boulevard, Daytona Beach, Florida 32114, where it may be served.

12. At all times relevant, Defendant LANE JENNINGS JR. was employed by Halifax Health and acted under color of state law. Jennings may

be served at his place of employment at Halifax Health Medical Center, 303 North Clyde Morris Boulevard, Daytona Beach, Florida 32114.

13. At all times relevant, Defendant ANNE CONWAY was employed by Halifax Health and acted under color of state law. Conway may be served at Halifax Health Medical Center, 303 North Clyde Morris Boulevard, Daytona Beach, Florida 32114.

14. At all times relevant, Defendant KAREN McMILLAN was employed by Halifax Health and acted under color of state law. McMillan may be served at Halifax Health Medical Center, 303 North Clyde Morris Boulevard, Daytona Beach, Florida 32114.

15. At all times relevant, Defendant THOMAS DELGADO was employed by Halifax Health and acted under color of state law. Delgado may be served at Halifax Health Medical Center, 303 North Clyde Morris Boulevard, Daytona Beach, Florida 32114.

16. The true names and capacities of persons or entities, whether individual, corporate, associate, or otherwise, who may may be responsible for some of the claims alleged herein are currently unknown to Plaintiff. Plaintiff will seek leave from the court to amend this complaint to reflect the true names and capacities of such other responsible parties when their identities become known.

17. All of Plaintiff's claims stated herein are asserted against STETSON UNIVERSITY, INC. are asserted against the institution itself and its owners, predecessors, successors, subsidiaries, affiliates, agents, employees, and assigns, under principles of direct liability, vicarious liability, and respondeat superior where applicable.

18. All of Plaintiff's claims stated herein are asserted against HALIFAX HEALTH MEDICAL CENTER are asserted against the institution itself and its owners, predecessors, successors, subsidiaries, affiliates, agents, employees, and assigns, under principles of direct liability, vicarious liability, and respondeat superior where applicable.

19. Before asserting claims against Halifax Health, Plaintiff provided formal notice pursuant to Fla. Stat. § 768.28, thereby satisfying all pre-suit requirements applicable to claims against a public hospital system.

## FACTUAL BACKGROUND

20. In January 2025, Plaintiff began his graduate-level counseling practicum at Halifax Health Medical Center through a Stetson-approved clinical placement, a requirement for completion of Stetson University's counseling program.

21. Plaintiff was awarded an HRSA grant through Stetson University for this placement, and his continued eligibility depended on successful

completion of the practicum.

22. Throughout January and February 2025, Plaintiff's designated supervisor, Anne Conway, was frequently absent, and Halifax employee Lane Jennings Jr., who was not listed in the site contract, lacked the required credentials, and had no authorization to supervise counseling students, began unilaterally assuming supervisory authority over Plaintiff.

23. Between January and February 2025, Plaintiff repeatedly observed that Conway was absent for extended periods, including a full week of vacation, during which uncredentialed interns and LCSWs were left responsible for Plaintiff and other practicum students. These practices violated the site contract, CACREP Standards 3.C, 3.P, 3.Q, and 3.F, and Florida LMHC licensure requirements, all of which require supervision by a qualified, credentialed professional. Plaintiff reported these violations to Stetson before his removal from the site.

24. Between February 1 and February 21, 2025, Jennings engaged in repeated unwanted physical contact, including prolonged hugs and touching, made sexually suggestive remarks, and attempted to cultivate a dual relationship with Plaintiff, creating a coercive, unsafe, and sexually charged environment.

25. On or about February 21, 2025, Plaintiff obtained an audio recording in which Jennings acknowledged that he was "meant to mentor"

Plaintiff, despite not being Plaintiff's assigned supervisor. This recording, provided to Stetson, further demonstrated Jennings' unauthorized assumption of supervisory authority and his inappropriate personal involvement with Plaintiff.

26. On February 21, 2025, Plaintiff experienced significant emotional distress related to Jennings' conduct and contacted Stetson faculty for support. Later that same day, Stetson faculty members Jude Singh and Brooke Bugni instructed Plaintiff not to return to Halifax Health, citing "developing concerns," despite Plaintiff having received no prior warnings or performance-related feedback.

27. On February 24, 2025, Plaintiff reported to Stetson faculty, including Singh, Bugni, and Dr. Danielle Lindner, that he was experiencing PTSD symptoms, panic attacks, and passive suicidal ideation triggered by the harassment and coercive conduct at Halifax, and that he was under the care of a forensic psychiatrist, Dr. Ryan Hall. Stetson faculty acknowledged these disclosures in writing, confirming that the University had actual knowledge of Plaintiff's disability and mental-health needs.

28. Between February 24 and February 28, 2025, Plaintiff sent multiple written reports to Stetson faculty and administrators detailing:

a. sexual harassment by Jennings;

b. unauthorized and unethical supervision;

c. CACREP and Florida licensure violations;

d. retaliatory evaluation practices; and

e. the absence of legitimate performance-based concerns.

29. On February 28, 2025, Plaintiff submitted a formal written appeal to Stetson alleging retaliation, sexual harassment, supervision violations, and institutional negligence. Stetson acknowledged receipt of these reports.

30. Halifax issued a negative evaluation dated February 18, 2025, even though Conway was out of state in North Carolina at that time and had not observed Plaintiff's work. The evaluation was completed without any formal supervision sessions, performance documentation, or opportunity for Plaintiff to respond, demonstrating that the evaluation was retaliatory and pretextual.

31. Despite receiving actual notice of sexual harassment and supervision violations, Stetson failed to initiate a Title IX investigation, contrary to federal law and its own policies.

32. On March 3, 2025, Plaintiff met with Stetson's Title IX office, yet Stetson still declined to open a formal Title IX investigation or take protective action.

33. Despite Plaintiff's repeated written reports of sexual harassment, Stetson faculty, including licensed mental-health professionals who are mandatory reporters under Title IX, failed to file a formal Title IX report or

initiate an investigation. Stetson's Title IX office later confirmed that no formal complaint had been opened.

34. Before the PAR Committee was formally convened, Stetson administrators informed Plaintiff that he would be unable to participate in any clinical training until Fall 2025, effectively predetermining the outcome of the PAR process and imposing a punitive delay in Plaintiff's academic progress before any review had occurred.

35. On March 17, 2025, Stetson convened a PAR Committee meeting, treating Plaintiff as the subject of remediation rather than the victim of harassment. The committee disregarded Plaintiff's reports, the unauthorized supervision, and the sexual misconduct at Halifax.

36. On March 31, 2025, Stetson issued a PAR Remediation Letter requiring Plaintiff to:

a. retake Ethics, a course he had already passed with an A;
b. complete a late drop of his practicum;
c. accept sanctions unrelated to any documented performance issue; and
d. delay his graduation by at least one academic year.

37. Between April 1 and April 9, 2025, Plaintiff attempted to appeal the PAR decision. Stetson administrators, including Dean Kyle Longest and Dr. Melinda Hall, provided inconsistent and contradictory instructions,

ultimately informing Plaintiff that he had "forfeited" his right to appeal, despite Plaintiff having attempted to appeal within the required timeframe.

38. Between April 21 and April 24, 2025, Plaintiff submitted the required practicum drop form to the Registrar's Office, but the form was not processed due to administrative delays outside Plaintiff's control. Despite this, Stetson threatened Plaintiff with dismissal for failing to complete the drop, even though Plaintiff had already submitted the form and obtained the signatures he was able to secure.

39. Plaintiff also referenced Stetson's prior Title IX compliance failures, which had been publicly documented less than a decade earlier. Stetson administrators did not dispute this history, further demonstrating the University's longstanding pattern of inadequate Title IX enforcement and deliberate indifference to sexual-harassment complaints.

40. On July 18, 2025, Plaintiff reported to the new Department Chair, Dr. Bradley McKibben, that he was experiencing ongoing retaliation, including unjust grading in COUN 502, where he received:

a. a grade of zero on a major assignment despite timely submission;

b. a 40/100 participation grade without explanation; and

c. a 30% deduction on the final exam despite documented personal circumstances.

41. On July 24, 2025, Plaintiff submitted a formal grade appeal, again documenting retaliation and discrimination. Stetson denied the appeal on August 5, 2025, upholding the punitive grading decisions.

42. Halifax Health never investigated Plaintiff's reports of sexual harassment, unauthorized supervision, or retaliation. Instead, Halifax dismissed Plaintiff from the practicum on February 21, 2025, without notice, documentation, or due process.

43. As a direct and proximate result of Defendants' actions, Plaintiff suffered severe emotional distress, including exacerbation of his diagnosed PTSD, panic attacks, and a psychiatric crisis requiring intervention by his treating forensic psychiatrist.

44. Plaintiff also suffered substantial economic, academic, and professional harm as a direct and proximate result of Defendants' conduct. These injuries include the loss of educational and professional opportunities, a significant delay in graduation, the revocation and loss of HRSA grant funds, the incurrence of medical and psychological treatment expenses, and a resulting diminution in future earning capacity.

45. Plaintiff required ongoing psychiatric treatment throughout 2025, including multiple follow-up visits, to address the exacerbation of PTSD, panic attacks, and trauma-related symptoms caused by Defendants' conduct.

**COUNT ONE**
**TITLE IX: SEXUAL HARASSMENT**
***(Against Stetson University)***

46. At all times relevant, Defendant Stetson University was a recipient of federal financial assistance and therefore subject to Title IX of the Education Amendments of 1972, which prohibits discrimination on the basis of sex in educational programs and activities.

47. Plaintiff was participating in a Stetson-approved practicum placement, an educational program covered by Title IX, when he was subjected to unwelcome sexual harassment, including unwanted physical contact, sexually suggestive remarks, coercive conduct, and boundary violations by Halifax employee Lane Jennings Jr., who exercised supervisory authority over Plaintiff within the practicum setting.

48. Beginning on February 21, 2025, and continuing through February 28, 2025, Plaintiff provided Stetson faculty and administrators, including licensed mental-health professionals who are mandatory Title IX reporters, with multiple written and verbal reports detailing the sexual harassment, unauthorized supervision, and coercive conduct occurring at Halifax Health.

49. Stetson therefore had actual notice of sexual harassment affecting a student participating in a Stetson educational program and had a legal duty under Title IX to take immediate, appropriate, and effective action to investigate, remedy, and prevent further harassment.

50. Despite this actual notice, Stetson failed to initiate a Title IX investigation, failed to take protective measures, failed to remove Plaintiff from the hostile environment safely, and failed to take any steps reasonably calculated to end the harassment or prevent its recurrence.

51. As a direct result of Stetson's failure to act, Plaintiff lost access to his practicum placement, lost HRSA funding tied to that placement, and was prevented from progressing in his degree program, demonstrating a concrete denial of educational benefits under Title IX.

52. Instead of addressing the misconduct, Stetson responded with deliberate indifference, treating Plaintiff as the problem, removing him from the practicum, revoking his HRSA grant, and initiating punitive academic actions that further harmed Plaintiff and exacerbated the hostile environment.

53. Stetson's deliberate indifference was clearly unreasonable considering the known circumstances and directly caused Plaintiff to suffer additional harm, including continued exposure to a hostile educational environment, academic penalties, emotional trauma, and financial losses.

54. As a direct and proximate result of Stetson's violations of Title IX, Plaintiff suffered educational, emotional, psychological, and financial harm, including exacerbation of PTSD, loss of educational and professional opportunities, delayed graduation, loss of HRSA funding, and diminished earning capacity.

**COUNT TWO**
**TITLE IX: RETALIATION**
***(Against Stetson University)***

55. Plaintiff engaged in protected activity under Title IX when, between February 21 and February 28, 2025, he made multiple written and verbal reports to Stetson faculty, administrators, and the Title IX office regarding sexual harassment, unauthorized supervision, boundary violations, and CACREP and licensure violations occurring at his Stetson-approved practicum site.

56. Plaintiff further engaged in protected activity when he submitted a formal written appeal on February 28, 2025, expressly alleging sexual harassment, retaliation, and institutional negligence, and when he met with Stetson's Title IX office on March 3, 2025.

57. Stetson had actual knowledge that Plaintiff was reporting conduct protected under Title IX, and Stetson faculty, including licensed mental-health professionals who are mandatory Title IX reporters, were required to forward such reports to the Title IX office and ensure that Plaintiff was protected from retaliation.

58. Instead of taking steps reasonably calculated to investigate or remedy the harassment, Stetson responded with adverse actions that materially affected Plaintiff's access to educational opportunities, including but not limited to:

a. removing Plaintiff from his practicum placement on February 21, 2025;

b. revoking Plaintiff's HRSA grant;

c. initiating a punitive PAR Committee process;

d. requiring Plaintiff to retake coursework he had already passed;

e. delaying Plaintiff's graduation by at least one academic year;

f. issuing retaliatory grades in Summer 2025; and

g. obstructing Plaintiff's ability to appeal the PAR decision.

59. These adverse actions occurred immediately after Plaintiff's protected activity and were inconsistent with Stetson's treatment of similarly situated students, demonstrating a causal connection between Plaintiff's protected activity and Stetson's retaliatory conduct.

60. Stetson's PAR Remediation Letter (March 31, 2025) and PAR Decision Letter (October 2, 2025) confirm that Stetson imposed punitive academic sanctions before conducting any Title IX investigation, further evidencing that the adverse actions were retaliatory rather than performance-based.

61. Stetson's actions were intentional, retaliatory, and clearly unreasonable considering the known circumstances, and they deprived

Plaintiff of equal access to educational programs and benefits in violation of Title IX.

62. As a direct and proximate result of Stetson's retaliation, Plaintiff suffered educational, emotional, psychological, and financial harm, including exacerbation of PTSD, delayed graduation, loss of funding, loss of professional opportunities, and diminished earning capacity.

**<u>COUNT THREE</u>**
**SECTION 504 OF THE REHABILITATION ACT**
***(Against Stetson University)***

63. At all times relevant, Defendant Stetson University was a recipient of federal financial assistance, including federal student aid funds and HRSA grant funding, and is therefore subject to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

64. Plaintiff is an individual with a disability within the meaning of Section 504. Plaintiff has a documented diagnosis of Post-Traumatic Stress Disorder (PTSD) and, during the events described herein, experienced panic attacks, trauma-related symptoms, and passive suicidal ideation, all of which substantially limited one or more major life activities.

65. Stetson had actual knowledge of Plaintiff's disability. On February 24, 2025, Plaintiff informed Stetson faculty, including licensed mental-health professionals, of his PTSD symptoms, panic attacks, and suicidal ideation, and

notified them that he was under the care of a forensic psychiatrist. Stetson acknowledged these disclosures in writing.

66. Plaintiff requested reasonable accommodations, including academic flexibility, support during the practicum crisis, and consideration of his disability-related symptoms in evaluating his academic performance and practicum status.

67. Plaintiff was otherwise qualified to continue participating in his practicum and academic program, and would have been able to do so with reasonable accommodations, including academic flexibility and disability-related support.

68. Despite having actual knowledge of Plaintiff's disability and accommodation needs, Stetson failed to engage in the interactive process, failed to provide reasonable accommodations, and instead imposed punitive academic actions that exacerbated Plaintiff's symptoms and denied him equal access to educational opportunities.

69. Stetson's own communications acknowledged Plaintiff's PTSD symptoms and mental-health crisis, yet Stetson proceeded to impose academic penalties and remove Plaintiff from clinical training without considering disability-related accommodations, demonstrating exclusion from educational access on the basis of disability.

70. Stetson further retaliated against Plaintiff for requesting accommodations and disclosing his disability by:

a. removing him from his practicum placement;

b. revoking his HRSA grant;

c. initiating a punitive PAR Committee process;

d. requiring him to retake coursework he had already passed;

e. delaying his graduation; and

f. issuing retaliatory grades in Summer 2025.

71. Stetson's actions were intentional, discriminatory, and taken with deliberate indifference to Plaintiff's federally protected rights under Section 504.

72. As a direct and proximate result of Stetson's violations of Section 504, Plaintiff suffered emotional, psychological, academic, and financial harm, including exacerbation of PTSD, delayed graduation, loss of funding, loss of educational and professional opportunities, and diminished earning capacity.

## COUNT FOUR
## ADA TITLE III
## *(Against Stetson University)*

73. At all times relevant, Defendant Stetson University was and is a "place of public accommodation" within the meaning of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181(7), and is therefore

prohibited from discriminating against individuals with disabilities in the full and equal enjoyment of its services, programs, and activities.

74. Plaintiff is an individual with a disability within the meaning of the ADA. Plaintiff has a documented diagnosis of Post-Traumatic Stress Disorder (PTSD) and, during the events described herein, experienced panic attacks, trauma-related symptoms, and passive suicidal ideation that substantially limited one or more major life activities.

75. Stetson had actual knowledge of Plaintiff's disability. On February 24, 2025, Plaintiff informed Stetson faculty, including licensed mental-health professionals, of his PTSD symptoms, panic attacks, and suicidal ideation, and notified them that he was under the care of a forensic psychiatrist. Stetson acknowledged these disclosures in writing.

76. Plaintiff requested reasonable accommodations, including academic flexibility, support during the practicum crisis, and consideration of his disability-related symptoms in evaluating his academic performance and practicum status.

77. Despite having actual knowledge of Plaintiff's disability and accommodation needs, Stetson failed to engage in the interactive process, failed to provide reasonable accommodations, and instead imposed punitive academic actions that denied Plaintiff equal access to Stetson's educational programs and services.

78. As a result of Stetson's failure to accommodate Plaintiff's disability, Plaintiff was excluded from participating in clinical training, deprived of HRSA funding, and prevented from progressing in his degree program, demonstrating a denial of full and equal enjoyment of Stetson's educational services.

79. Stetson's refusal to provide accommodations during the practicum crisis, combined with its decision to delay Plaintiff's graduation and revoke his HRSA funding, denied Plaintiff equal access to Stetson's educational programs and services in violation of Title III.

80. Stetson further retaliated against Plaintiff for requesting accommodations and disclosing his disability by:

a. removing him from his practicum placement;

b. revoking his HRSA grant;

c. initiating a punitive PAR Committee process;

d. requiring him to retake coursework he had already passed;

e. delaying his graduation; and

f. issuing retaliatory grades in Summer 2025.

81. Stetson's actions were intentional, discriminatory, and taken with deliberate indifference to Plaintiff's federally protected rights under the ADA.

82. As a direct and proximate result of Stetson's violations of Title III of the ADA, Plaintiff suffered emotional, psychological, academic, and financial

harm, including exacerbation of PTSD, delayed graduation, loss of funding, loss of educational and professional opportunities, and diminished earning capacity.

## <u>COUNT FIVE</u>
## 42 U.S.C. § 1983: EQUAL PROTECTION
## *(Against Halifax and Individual Halifax Defendants)*

83. At all times relevant, Halifax Health Medical Center was a public hospital system organized under Florida law, and its employees, including Lane Jennings Jr., Anne Conway, Karen McMillan, and Thomas Delgado, were acting under color of state law within the meaning of 42 U.S.C. § 1983. Halifax employees, acting under color of state law, subjected Plaintiff to sexual harassment and discriminatory treatment.

84. The Equal Protection Clause of the Fourteenth Amendment prohibits state actors from subjecting individuals to discrimination, including sexual harassment, on the basis of sex.

85. While Plaintiff was participating in a Stetson-approved practicum at Halifax, Jennings, acting under color of state law and in a position of supervisory authority, subjected Plaintiff to unwelcome sexual harassment, including unwanted physical contact, sexually suggestive remarks, coercive conduct, and boundary violations.

86. Jennings' conduct constituted sex-based discrimination, as it was motivated by Plaintiff's sex and created a hostile, intimidating, and abusive

environment that deprived Plaintiff of equal protection of the laws.

87. Jennings' sexually suggestive remarks, prolonged hugs, and boundary-violating physical contact were directed at Plaintiff specifically because of his sex, and Halifax's failure to intervene despite actual notice demonstrates intentional sex-based discriminatory treatment.

88. Halifax employees, including Conway, McMillan, and Delgado, were aware, or reasonably should have been aware, of Jennings' unauthorized supervision, boundary violations, and inappropriate conduct, yet failed to intervene, supervise, discipline, or protect Plaintiff, thereby allowing the discriminatory conduct to continue.

89. Halifax's failure to act in response to known or obvious risks of sexual harassment constituted deliberate indifference, which directly contributed to the violation of Plaintiff's constitutional rights.

90. Halifax is liable under Monell v. Department of Social Services, 436 U.S. 658 (1978), because the constitutional violations suffered by Plaintiff were caused by Halifax's policies, customs, or practices, including but not limited to:

a. failing to supervise or monitor employees placed in positions of authority over students;

b. permitting uncredentialed and unauthorized individuals to assume supervisory roles;

c. failing to investigate reports of sexual harassment or misconduct;

d. failing to train staff regarding supervision, boundaries, and student safety; and

e. maintaining a culture of disregard for student welfare and reporting obligations.

91. Halifax's policies, customs, and failures to supervise created an environment in which sexual harassment and discriminatory treatment were allowed to occur unchecked, thereby causing the deprivation of Plaintiff's rights under the Equal Protection Clause.

92. As a direct and proximate result of the acts and omissions of Halifax and the individual Halifax defendants, Plaintiff suffered emotional distress, psychological trauma, loss of educational opportunities, and other damages as described herein.

**COUNT SIX**
**42 U.S.C. § 1983: RETALIATION**
***(Against Halifax and Individual Halifax Defendants)***

93. At all times relevant, Halifax Health Medical Center was a public hospital system organized under Florida law, and its employees, including Lane Jennings Jr., Anne Conway, Karen McMillan, and Thomas Delgado, were acting under color of state law within the meaning of 42 U.S.C. § 1983.

94. Plaintiff engaged in protected activity when, between February 21 and February 28, 2025, he reported to Halifax and Stetson faculty that he was being subjected to sexual harassment, unauthorized supervision, boundary violations, and ethical and licensure violations by Halifax employee Lane Jennings Jr.

95. Plaintiff's reports constituted protected speech and conduct under the First and Fourteenth Amendments, including speech on matters of public concern (e.g., sexual misconduct by a state-actor employee, violations of professional standards, and safety concerns within a public hospital).

96. Plaintiff's reports included allegations of sexual misconduct by a state-actor employee, violations of licensure law, and safety risks within a public hospital—matters that plainly involve public concern and fall within the core protections of the First Amendment, as they directly implicated patient safety, student welfare, and compliance with state licensure requirements.

97. Halifax employees, including Jennings, Conway, McMillan, and Delgado, were aware of Plaintiff's protected activity and, rather than investigate or address the misconduct, responded with retaliation.

98. On February 21, 2025, immediately after Plaintiff reported Jennings' conduct, Halifax terminated Plaintiff from the practicum, barred him from returning to the site, and provided no notice, documentation, or opportunity to respond. This termination was not based on performance, was

unsupported by any contemporaneous evidence, and occurred only after Plaintiff engaged in protected activity.

99. Halifax's retaliatory actions were taken under color of state law and were intended to punish Plaintiff for reporting misconduct, silence further complaints, and protect Halifax employees from scrutiny.

100. Halifax's retaliation deprived Plaintiff of constitutional rights secured by the First Amendment (freedom from retaliation for protected speech) and the Fourteenth Amendment (freedom from arbitrary and retaliatory state action).

101. Halifax is liable under Monell v. Department of Social Services, 436 U.S. 658 (1978), because the retaliation Plaintiff suffered was caused by Halifax's policies, customs, or practices, including:

a. failing to investigate reports of misconduct by employees;

b. failing to supervise or discipline employees placed in positions of authority over students;

c. maintaining a culture of retaliation against individuals who report misconduct; and

d. failing to train staff regarding constitutional obligations and retaliation prohibitions.

102. As a direct and proximate result of Halifax's retaliatory conduct, Plaintiff suffered emotional distress, psychological trauma, loss of educational opportunities, financial harm, and other damages as described herein.

**COUNT SEVEN**
**42 U.S.C. § 1983: DUE PROCESS**
***(Against Halifax and Individual Halifax Defendants)***

103. At all times relevant, Halifax Health Medical Center was a public hospital system organized under Florida law, and its employees, including Lane Jennings Jr., Anne Conway, Karen McMillan, and Thomas Delgado, were acting under color of state law within the meaning of 42 U.S.C. § 1983.

104. Plaintiff possessed a protected liberty and property interest in his graduate-level education, including the right to continue his Stetson-approved practicum placement, the right to pursue his degree without arbitrary state interference, and the right to be free from stigmatizing or career-damaging actions taken without due process.

105. Halifax exercised state-actor authority over Plaintiff by controlling his practicum placement, supervising his clinical work, evaluating his performance, and possessing the power to terminate his placement - an action that directly affected Plaintiff's academic standing, HRSA funding, and progress toward graduation.

106. On February 21, 2025, immediately after Plaintiff reported sexual harassment and misconduct by Halifax employee Lane Jennings Jr., Halifax

terminated Plaintiff from the practicum, barred him from returning to the site, and communicated this termination to Stetson University.

107. Halifax's termination decision was made without any notice, without any explanation, without any opportunity for Plaintiff to respond, and without any documented performance-based justification, thereby depriving Plaintiff of his protected interests without the procedural safeguards required by the Fourteenth Amendment.

108. Halifax's actions were arbitrary, retaliatory, and undertaken with deliberate indifference to Plaintiff's constitutional rights, particularly given that the termination occurred immediately after Plaintiff engaged in protected reporting activity.

109. Halifax's failure to provide notice, investigation, documentation, or an opportunity to be heard violated Plaintiff's procedural due process rights under the Fourteenth Amendment.

110. Halifax is liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), because the deprivation of Plaintiff's due process rights was caused by Halifax's policies, customs, or practices, including:

a. failing to establish or follow procedures for student practicum termination;

b. failing to train employees regarding due process obligations;

c. permitting uncredentialed individuals to supervise and evaluate students;

d. failing to investigate reports of misconduct; and

e. maintaining a culture of retaliation and arbitrary decision-making.

111. As a direct and proximate result of Halifax's unconstitutional conduct, Plaintiff suffered emotional distress, psychological trauma, loss of educational opportunities, financial harm, and other damages as described herein.

**COUNT EIGHT**
**NEGLIGENT SUPERVISION & RETENTION**
***(Against Halifax)***

112. At all times relevant, Halifax Health Medical Center owed Plaintiff a duty to exercise reasonable care in the hiring, supervision, monitoring, and retention of its employees, including those placed in positions of authority over students participating in clinical training programs.

113. Halifax knew or, in the exercise of reasonable care, should have known that Lane Jennings Jr. was unqualified, uncredentialed, and unauthorized to supervise counseling practicum students, and that allowing him to assume supervisory authority created a foreseeable risk of harm to Plaintiff.

114. Throughout January and February 2025, Halifax permitted Jennings to act in a supervisory capacity despite:

a. not being listed in the Stetson–Halifax site contract;

b. lacking the credentials required under CACREP standards and Florida licensure law;

c. having no formal supervisory training; and

d. assuming authority during extended periods when Plaintiff's assigned supervisor, Anne Conway, was absent.

115. Halifax further failed to supervise or discipline Jennings even after he engaged in boundary violations, coercive conduct, unwanted physical contact, and sexually suggestive behavior, all of which were observable, reportable, and preventable through reasonable oversight.

116. Halifax failed to implement or enforce policies requiring credential verification, supervision oversight, reporting of misconduct, or protection of students placed in clinical training environments.

117. Halifax's failure to supervise, monitor, or discipline Jennings allowed him to continue engaging in inappropriate and harmful conduct toward Plaintiff, creating a foreseeable and unreasonable risk of injury.

118. Halifax also negligently retained Jennings in a position of authority after it knew or should have known of his unfitness, including his

unauthorized supervision, inappropriate conduct, and the risks he posed to students.

119. Plaintiff provided formal notice of his claims to Halifax Health pursuant to Fla. Stat. § 768.28, thereby satisfying all pre-suit requirements applicable to claims against a public hospital system.

120. As a direct and proximate result of Halifax's negligent supervision and retention of Jennings, Plaintiff suffered emotional distress, psychological trauma, loss of educational opportunities, financial harm, and other damages as described herein.

**COUNT NINE**
**BATTERY**
***(Against Jennings and Halifax)***

121. Under Florida common law, battery occurs when a person intentionally causes a harmful or offensive physical contact with another without consent.

122. Defendant Lane Jennings Jr. intentionally subjected Plaintiff to unwanted and offensive physical contact, including prolonged hugs, touching, and boundary-violating physical interactions, all undertaken without Plaintiff's consent.

123. Jennings' conduct occurred repeatedly over several weeks, during periods when Halifax permitted him to act in a supervisory capacity despite lacking credentials, making the battery both foreseeable and preventable

through reasonable supervision.

124. Jennings' conduct was deliberate, coercive, and carried out while he was exercising supervisory authority over Plaintiff within the Halifax practicum environment, making the contact particularly intimidating, inappropriate, and professionally abusive.

125. A reasonable person would find Jennings' physical contact to be offensive, unwelcome, and inappropriate, especially in a clinical training environment governed by professional ethics, licensure standards, and supervisory boundaries.

126. Plaintiff did not consent to any of Jennings' physical contact, and the contact caused Plaintiff emotional distress, humiliation, fear, and psychological harm.

127. At all times relevant, Jennings was acting within the course and scope of his employment with Halifax Health, or was aided in committing the battery by the authority, access, and supervisory role Halifax conferred upon him.

128. Halifax Health is therefore vicariously liable for Jennings' conduct under the doctrine of respondeat superior, and is also directly liable for negligent supervision and retention as alleged in Count Eight.

129. As a direct and proximate result of Jennings' battery and Halifax's failure to prevent or intervene, Plaintiff suffered emotional distress,

psychological trauma, medical expenses, and other damages as described herein.

## COUNT TEN
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
***(Against All Defendants)***

130. Defendants' conduct, individually and collectively, was extreme, outrageous, and beyond all bounds of decency tolerated in a civilized society, including but not limited to:

a. subjecting Plaintiff to unwanted physical contact, sexually suggestive remarks, and coercive conduct by Halifax employee Lane Jennings Jr.;

b. permitting an unauthorized, uncredentialed individual to assume supervisory authority over Plaintiff;

c. failing to investigate Plaintiff's reports of sexual harassment, boundary violations, and safety concerns;

d. retaliating against Plaintiff for reporting misconduct by removing him from his practicum, revoking his HRSA grant, imposing punitive academic sanctions, and delaying his graduation;

e. disregarding Plaintiff's documented PTSD, panic attacks, and suicidal ideation, despite actual notice of his disability and mental-health crisis; and

f. issuing retaliatory grades and obstructing Plaintiff's ability to appeal adverse decisions.

131. Defendants' conduct caused Plaintiff to experience a psychiatric crisis requiring medical intervention, as documented in his treatment records, demonstrating the severity and outrageousness of the emotional harm inflicted.

132. Defendants engaged in this conduct intentionally, maliciously, or with reckless disregard for the near certainty that their actions would cause Plaintiff severe emotional distress.

133. Defendants' actions were not merely negligent or insensitive; they were calculated, punitive, retaliatory, and deliberately indifferent to Plaintiff's safety, dignity, mental health, and educational future.

134. As a direct and proximate result of Defendants' extreme and outrageous conduct, Plaintiff suffered severe emotional distress, including exacerbation of PTSD, panic attacks, humiliation, fear, loss of sleep, psychiatric crisis requiring medical intervention, and ongoing psychological harm.

135. Plaintiff's emotional distress was and is so severe that no reasonable person could be expected to endure it, satisfying the legal standard for intentional infliction of emotional distress under Florida law.

**COUNT ELEVEN**
**BREACH OF CONTRACT**
***(Against Stetson)***

136. At all times relevant, a contractual relationship existed between Plaintiff and Stetson University, arising from Plaintiff's enrollment, payment of tuition and fees, acceptance of institutional policies, and Stetson's express and implied promises to provide educational services in accordance with its published standards, policies, accreditation requirements, and contractual agreements with practicum sites.

137. Stetson expressly and implicitly promised to provide Plaintiff with a safe, properly supervised, and compliant practicum experience, consistent with:

a. Stetson's published academic policies and practicum handbook;

b. CACREP accreditation standards;

c. Florida licensure requirements; and

d. the written Stetson–Halifax practicum site contract, which required qualified, credentialed supervision and adherence to professional standards.

138. Stetson further promised to follow its own Title IX, disability accommodation, student safety, appeals, and academic review procedures, all

of which form part of the contractual relationship between a university and its students.

139. Stetson's PAR Remediation Letter and PAR Decision Letter demonstrate that Stetson imposed sanctions and delayed Plaintiff's graduation without following its published procedures, thereby confirming its breach of contractual obligations.

140. Stetson breached these contractual obligations by:

a. placing Plaintiff in a practicum environment that was unsafe, non-compliant, and supervised by an unauthorized, uncredentialed individual;

b. failing to investigate or remedy sexual harassment and supervision violations after receiving actual notice;

c. failing to provide reasonable accommodations or engage in the interactive process despite documented disability-related needs;

d. failing to follow its own Title IX procedures;

e. failing to follow its own academic review and appeals procedures;

f. imposing punitive and arbitrary academic sanctions unrelated to Plaintiff's performance; and

g. delaying Plaintiff's graduation and obstructing his academic progress.

141. Stetson's breaches were material, substantial, and directly interfered with Plaintiff's ability to complete his practicum, maintain his HRSA funding, progress toward graduation, and access the educational services for which he paid.

142. As a direct and proximate result of Stetson's breach of contract, Plaintiff suffered educational, emotional, and financial harm, including delayed graduation, loss of HRSA grant funds, loss of educational and professional opportunities, and other damages described herein.

**DAMAGES**

138. Plaintiff seeks all available relief permitted by federal and state law, including but not limited to the following:

a) Economic damages, including loss of HRSA grant funds, delayed graduation, loss of educational and professional opportunities, and all financial losses proximately caused by Defendants' conduct.

b) Emotional distress damages, including compensation for severe emotional anguish, humiliation, trauma,

exacerbation of PTSD, panic attacks, and psychological harm resulting from Defendants' actions.

c) Medical and psychological treatment costs, including past and future expenses for psychiatric care, therapy, medication, and crisis intervention related to the harm inflicted by Defendants.

d) Loss of earning capacity, including diminished future earnings resulting from delayed entry into the counseling profession, reputational harm, and disruption of Plaintiff's academic and professional trajectory.

e) Punitive damages, available under federal law against the individual Halifax defendants in their individual capacities and under Florida state law against Halifax Health, for their willful, wanton, reckless, and consciously indifferent conduct.

f) Attorneys' fees and costs, including reasonable fees under 42 U.S.C. § 1988, Title IX, Section 504, and other applicable statutes, together with pre-- and post-judgment interest as allowed by law.

**INJUNCTIVE RELIEF**
***(Against Stetson University Only)***

139. Plaintiff seeks appropriate declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201–2202 and applicable provisions of Title IX, Section 504, and the ADA, including but not limited to:

a) Correction of academic records, including removal of retaliatory grades, elimination of negative status designations, and restoration of Plaintiff's academic standing;

b) Reinstatement of practicum eligibility, including access to a safe, compliant, and properly supervised practicum placement without punitive conditions or delays;

c) Policy reforms and Title IX compliance measures, including implementation of nondiscriminatory evaluation procedures, mandatory training for faculty and administrators, and enforcement of Title IX, ADA, and Section 504 obligations toward students reporting harassment or requesting accommodations;

d) A prohibition on further retaliation, including an order preventing Stetson, its agents, and its employees from engaging in any adverse action against Plaintiff for reporting sexual harassment, requesting accommodations, or pursuing this action.

## PRAYER FOR RELIEF

140. **WHEREFORE,** for the foregoing reasons and pursuant to the Counts above, Plaintiff, GREGORY McCORMICK, demands judgment against the Defendants, STETSON UNIVERSITY, INC.; HALIFAX HEALTH MEDICAL CENTER; LANE JENNINGS, JR., ANNE CONWAY, KAREN McMILLAN, and THOMAS DELGADO, and in the alternative, for alternative, for general, compensatory, and punitive damages, reasonable attorney's fees and costs of suit with interest, and any further relief which the court may deem equitable and just.

## JURY DEMAND

141. Plaintiff GREGORY McCORMICK hereby demands a trial by jury on all issues so triable as a matter of right.

Respectfully Submitted,

Dated: September 28, 2026

**LLG NATIONAL LAW GROUP**



Robert S. Mactavish
Florida Bar Number 0596388
Phoenix Corporate Tower
3003 N. Central Avenue
Suite 685
Phoenix, AZ 85012
P: 575-517-6542
robert.mactavish@llgnational.com
*Attorney for Plaintiffs*