**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

GREGORY MCCORMICK, CASE NO.: 6:26-cv-02252-AGM-RMN

Plaintiff,

v.

STETSON UNIVERSITY, INC.; HALIFAX HEALTH MEDICAL CENTER; LANE JENNINGS, JR., in his individual capacity; ANNE CONWAY, in her individual Capacity; KAREN MCMILLAN, in her individual capacity; THOMAS DELGADO, in his individual capacity,

Defendants.
______________________________/

**HALIFAX HEALTH MEDICAL CENTER AND ANNE CONWAY'S MOTION TO DISMISS COUNTS FIVE, SIX, SEVEN, EIGHT, NINE, AND TEN OF THE COMPLAINT**

Defendants, HALIFAX HOSPITAL MEDICAL CENTER[1] ("Halifax Hospital") and ANNE CONWAY (collectively, the "Defendants"), by and through their undersigned counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule 3.01 move this Court to dismiss the counts of

1 The proper name of this defendant is "Halifax Hospital Medical Center." This name is established by special act of the Florida Legislature, although the organization is often times referred to as "Halifax Health."

Plaintiff's Complaint asserted against them, and as grounds therefor state as follows:

**BACKGROUND ON HALIFAX DEFENDANTS**

Defendant Halifax Hospital is a special taxing district of the State of Florida established pursuant to chapter 2003-374, Laws of Florida, as amended by chapter 2019-172, Laws of Florida. A special taxing district, including a hospital district such as this Defendant, is a state agency or subdivision that enjoys sovereign immunity, and the state law claims filed against it in this case are governed by Section 768.28, Florida Statutes. On this point, the Florida Supreme Court has explained:

> . . . we find this special taxing district is a constitutionally established local governmental entity charged with the responsibility to provide for the "public health . . . and good" of the citizens within the district. The provisions of the 1968 Constitution leave no doubt that special taxing districts are included as one of four types of local governmental entities, along with counties, school districts, and municipalities. In our view, the legislature clearly intended the provisions of section 768.28(2) to include special taxing districts within the phrase "independent establishments of the state."

*Eldred v. N. Broward Hosp. Dist.*, 498 So. 2d 911, 914 (Fla. 1986).

Defendant Anne Conway ("Ms. Conway") is an employee of Halifax Hospital. As explained in detail below, Ms. Conway enjoys the protections of Section 768.28(9)(a), Florida Statutes.

The Complaint alleges that Defendants Karen McMillan and Thomas Delgado are or at least were employees of Halifax Hospital. However, Halifax Hospital has no record of these two people having been employed by Halifax Hospital and the Complaint has no meaningfully specific allegations related to these two Defendants. The undersigned counsel have conferred with Plaintiff's counsel on this issue and he has confirmed that Plaintiff maintains that these two people were employed by Halifax Hospital during the relevant time period. These two Defendants have not been served with process. Although there is a factual dispute as to these two defendants, Halifax Hospital believes that the Complaint, as currently pled, can be dismissed by the Court.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In considering a motion to dismiss for failure to state a claim, the Court must accept as true the well-pleaded factual allegations and any reasonable inference to be drawn from them, but legal conclusions are not entitled to the same assumption of truth. *Id.* A complaint must contain either direct or inferential allegations respecting all the material elements necessary to

sustain recovery under some viable legal theory. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555.

## ARGUMENT FOR DISMISSAL AND MEMORANDUM OF LAW

### I. COUNTS FIVE TO SEVEN— THE CLAIMS UNDER 42 U.S.C. SECTION 1983.

### A. Counts Five through Seven of the Complaint fail to state a claim against Halifax Hospital for a 42 U.S.C. Section 1983 violation as there is not a sufficient allegation of a policy, custom or practice.

Plaintiff pleads Counts Five through Seven against Halifax Hospital and Ms. Conway. Plaintiff alleges that Defendant Jennings' harassment denied Plaintiff equal protection (Count Five), that Halifax Hospital and Ms. Conway retaliated against Plaintiff for reporting the harassment (Count Six), and that the Defendants violated Plaintiff's due process when Plaintiff was terminated from the practicum (Count Seven). It then makes the conclusory statement that the constitutional violations suffered by Plaintiff were caused by Halifax's policies, customs, or practices. As explained more fully below, Plaintiff does not actually cite any specific policy, custom, or practice adopted by Halifax Hospital, or any particulars about past incidents related thereto, that caused the alleged harassment.

Absent a policy or custom, Section 1983 does not impose liability on a government entity for an employee's acts on a respondeat superior basis. *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 691 (1978) ("[T]he language of § 1983, read against the background of the same legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort. In particular, we conclude that . . . a municipality cannot be held liable under § 1983 on a respondeat superior theory."). *See also Connick v. Thompson*, 563 U.S. 51, 60 (2011). ("[U]nder § 1983, local governments are responsible only for 'their own illegal acts.' They are not vicariously liable under § 1983 for their employees' actions.") (internal citations omitted).

To hold a local government liable under Section 1983, "a plaintiff must show (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *Underwood v. City of Bessemer*, 11 F.4th 1317, 1333 (11th Cir. 2021); *see also Cunningham v. Cobb Cnty., Georgia*, 141 F.4th 1201, 1213 (11th Cir. 2025) ("A Monell claim is derivative of—and so requires—an actual constitutional violation by an officer." If a plaintiff cannot establish an actual constitutional violation by an officer, the plaintiff's *Monell* claim fails at step one. Put differently, when a plaintiff fails to establish

an underlying constitutional violation, we can dismiss the plaintiff's claims against the local government (or local government entity) as a matter of law.) (citing *Land v. Sheriff of Jackson Cnty.*, 85 F.4th 1121, 1129 (11th Cir. 2023)) (internal citations omitted).

Here, Plaintiff (1) alleges a violation of his constitutional right by alleging that Defendant Jennings' conduct constituted sex-based discrimination. However, (2) Plaintiff fails to allege what policy or custom held by Halifax Hospital constituted a deliberate indifference to Plaintiff's constitutional right. As a result, (3) Plaintiff fails to allege that a specific Halifax Hospital policy or custom caused the violation Plaintiff is alleging. Plaintiff pleads no facts showing Halifax Hospital acted against Plaintiff on a sex-based basis.

A plaintiff "who seek[s] to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury." *Connick,* 563 U.S. at 60-61. "A policy is a decision that is officially adopted by the [governmental entity], or created by an official of such rank that he or she could be said to be acting on behalf of the [governmental entity]," while "[a] custom is a practice that is so settled and permanent that it takes on the force of law." *Ireland v. Prummell*, 53 F.4th 1274, 1289 (11th Cir. 2022). Each Section 1983 count recites the same boilerplate: that Halifax "fail[ed] to supervise or monitor," "permitt[ed] uncredentialed . . . individuals to assume supervisory roles,"

"fail[ed] to investigate," "fail[ed] to train," and "maintain[ed] a culture of disregard." These are precisely the "[t]hreadbare recitals" and conclusory labels that are "not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–679 (2009). In *Keating v. Rambosk*, No. 2:25-CV-00598-JES-KRH, 2026 WL 1730099 (M.D. Fla. June 16, 2026), the court dismissed a similar complaint where allegations that the violations "were caused by policies, customs, or practices" and that "similar incidents . . . occurred prior" failed because they "provide[d] no who, what, when, or where of previous similar constitutional violations."

To establish a city's deliberate indifference, "a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Lewis v. City of W. Palm Beach*, Fla., 561 F.3d 1288, 1293 (11th Cir. 2009) (quoting *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir.1998)). "A city may be put on notice in two ways. First, if the city is aware that a pattern of constitutional violations exists, and nevertheless fails to provide adequate training, it is considered to be deliberately indifferent." *Lewis*, 561 F.3d at 1293. Alternatively, deliberate indifference may be proven without evidence of prior incidents, if the likelihood for constitutional violation is so high that the need for training would be obvious. *Id.*

To the extent Plaintiff proceeds on a failure-to-train or failure-to-supervise theory, he must allege facts showing the failure "evidences a deliberate indifference." *Keating v. Rambosk*, No. 2:25-CV-00598-JES-KRH, 2026 WL 1730099 (M.D. Fla. June 16, 2026). There must be "some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Keating v. Rambosk*, No. 2:25-CV-00598-JES-KRH, 2026 WL 1730099 (M.D. Fla. June 16, 2026) (citing *Lewis,* 561 F.3d at 1293). "A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62–63. A "less stringent standard of fault . . . would result in de facto respondeat superior liability on municipalities," which controlling precedent forbids. *Id.* at 61–62. The Complaint alleges no prior similar incident at Halifax Hospital, only Plaintiff's own experience. But "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability" absent an unconstitutional policy itself, and "a plaintiff must establish the existence of a pattern of similar violations." *Ireland v. Prummell*, 53 F.4th 1274, 1290 (11th Cir. 2022). Nor does the narrow single-incident exception apply; it is only in the rare case where the unconstitutional consequence of a failure to train is "patently obvious," such as arming officers

without training on deadly force; "[A]n officer lacking specific tools to handle that situation will violate citizens' rights." *Connick*, 563 U.S. at 63–64.

Counts Five through Seven fail against Halifax Hospital because Section 1983 imposes no liability on a government entity for an employee's acts on a respondeat-superior basis and Plaintiff does not sufficiently allege a policy or custom to impose liability on Halifax.

**B. Count Six of the Complaint also fails to state a claim against Halifax Hospital for a retaliation claim cognizable under the First Amendment.**

Count Six alleges a retaliation claim against Halifax Hospital alleging that Halifax removed Plaintiff from the practicum in retaliation for his reports about Jennings.[2] "To prove a retaliation claim cognizable under the First Amendment, a plaintiff must show that: (1) his speech was on a matter of public concern; (2) his First Amendment interest in engaging in the speech outweighed the employer's interest in prohibiting the speech; and (3) his speech played a "substantial part" in the employer's decision to discharge him. *Henry v. City of Tallahassee*, 149 F. Supp. 2d 1324, 1327 (N.D. Fla. 2001). "Absent extraordinary circumstances, First Amendment protection is unavailable when "a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest."" *Id.* (citing *Connick v. Myers*, 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)). By the Complaint's own terms, Plaintiff's reports

concerned his own treatment, the alleged harassment directed at him and the allegedly resulting removal. That he characterized the reports as implicating "patient safety" and "licensure" does not transform a personal grievance into protected public-concern speech. *See Seiglie v. City of Doral*, 819 F. Supp. 3d 1336, 1348 (S.D. Fla. 2026) ("To fall within the realm of 'public concern,' an employee's speech must relate to 'any matter of political, social, or other concern to the community.'" (internal citations omitted).

**C. Count Seven of the Complaint also fails to state a claim against Halifax Hospital for a procedural due process claim because it identifies no protected liberty or property interest.**

Count Seven alleges that Halifax terminated Plaintiff's practicum without notice or a hearing. Procedural due process protects only against the deprivation of a constitutionally protected liberty or property interest. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569–74 (1972). As it relates to Halifax, Plaintiff claims an interest in his continued practicum placement. The Complaint's allegations place the Plaintiff's educational relationship with Stetson, not Halifax. The practicum at Halifax was a "Stetson-approved" placement, and the grant ran "through Stetson." Plaintiff identifies no rule or understanding giving him a claim of entitlement, enforceable against Halifax, to a particular clinical placement. *See Page v. Hicks*, 773 Fed. Appx. 514 (11th Cir. 2019) (a student was

2 Halifax Hospital maintains that Stetson University terminated the Plaintiff's practicum.

dismissed from her state university's nursing anesthesia program because she received negative evaluations from staff at Baptist South Hospital where she was doing her clinical rotation. On appeal, the court held that the student failed to state a claim that her procedural and substantive due process rights to continued enrollment were violated by her nursing school.).

**D. The Complaint fails to state a claim against Ms. Conway for a 42 U.S.C. Section 1983 violation.**

As to Ms. Conway, Counts Five through Seven fail because Plaintiff does not allege any individual action by Ms. Conway that violated Plaintiff's constitutional right. "A plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 675-81. A supervisor is liable only if she "personally participates in the alleged unconstitutional conduct" or causes the violation through a recognized causal connection. *A.W. by & Through J.W. v. Coweta Cnty. Sch. Dist.*, 110 F.4th 1309, 1316 (11th Cir. 2024). "The necessary causal connection 'can be established when a history of widespread abuse puts the reasonable supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. The deprivations that constituted widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences.'" *Black v. City of Mobile*, 963 F. Supp. 2d 1288, 1304 (S.D. Ala. 2013) (citing *Braddy v. Florida*

*Dep't of Labor and Employment Security*, 133 F.3d 797, 801–802 (11th Cir.1998) (internal citations omitted).

The only specific factual allegation in the Complaint regarding Ms. Conway is that she was absent from work during the short period of time that the Plaintiff was at Halifax Hospital, and the Complaint alleges generically that Ms. Conway was aware, or reasonably should have been aware, of Jennings' conduct, yet "failed to intervene, supervise, discipline, or protect." The case of *Franklin v. Curry* holds that allegations a supervisor "knew or should have known" of a subordinate's misconduct are legally insufficient; deliberate indifference requires subjective, actual knowledge, and "constructive knowledge" does not suffice. *Franklin v. Curry*, 738 F.3d 1246, 1249-50 (11th Cir. 2013). Therefore, Plaintiff fails to allege a 42 U.S.C. Section 1983 claim against Ms. Conway.

**E. Ms. Conway is entitled to qualified immunity.**

A public official performing a discretionary function is entitled to qualified immunity unless (1) the official violated a constitutional right and (2) the relevant right was 'clearly established' at the time of the alleged misconduct. *Corbin v. Prummell*, 655 F. Supp. 3d 1143, 1156 (M.D. Fla. 2023). Qualified immunity may be raised on a motion to dismiss. *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337

(11th Cir. 2002). The process by which a court must address a qualified immunity defense is as follows:

> "When an official asserts qualified immunity, the district court must consider the issue on a claim-by-claim and defendant-by-defendant basis. *See Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018) ("[E]ach defendant is entitled to an independent qualified-immunity analysis as it relates to his or her actions and omissions."). The district court must first decide whether "the defendant was engaged in a discretionary function." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004). If so, "the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity." *Id.* (emphasis omitted). The plaintiff must then establish that "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Id.* District courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Townsend v. Jefferson Cnty.*, 601 F.3d 1152, 1158 (11th Cir. 2010) (citation and internal quotation marks omitted). But before rejecting a defense of qualified immunity, a district court must address each issue with "sufficient explanation[ ] . . . to provide [the eleventh circuit court] with an opportunity to engage in meaningful appellate review." *Danley v. Allen*, 480 F.3d 1090, 1091 (11th Cir. 2007)."

*Miller v. Palm Beach Cnty. Sheriff's Office*, 129 F.4th 1329, 1333 (11th Cir. 2025). Conway's supervision of a counseling practicum and the employees assigned to it were quintessential discretionary functions, so a qualified immunity analysis is required. See, *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004).

The only conduct the Complaint attributes to Conway personally is that she was Plaintiff's "designated supervisor" who was "frequently absent,"

including "a full week of vacation" (Compl. ¶¶ 22–23, 114), and that she, along with others, "w[as] aware, or reasonably should have been aware, of Jennings' unauthorized supervision, boundary violations, and inappropriate conduct, yet failed to intervene, supervise, discipline, or protect Plaintiff" (Compl. ¶ 88). However, the Complaint alleges only isolated conduct by Jennings over an extremely short period of time, when at the same time the Complaint alleges Conway was absent. Thus, the Complaint alleges no constitutional right that has been violated by Conway.

As to the equal protection claim in Count Five, Conway cannot be said to have violated the Plaintiff's equal protection rights unless she had the intent to discriminate. *Mencer v. Hammonds*, 134 F.3d 1066, 1070 (11th Cir. 1998). The Complaint contains no such allegation. Even if there was a failure on the part of Conway to properly supervise Jennings, she is still entitled to qualified immunity. *Braddy v. Florida Department of Labor & Employment Security*, 133 F.3d 797 (11th Cir. 1998).

As to the First / Fourteenth Amendment retaliation claim in Count Six, the adverse actions complained of in the Complaint are attributed to Stetson and Halifax Hospital, not Conway. There is no clearly established law that an official who was not personally involved in the allegedly adverse action can be held liable for retaliation. *Gaines v. Wardynski*, 871 F.3d 1203, 1212 (11th Cir. 2017).

As to the procedural due process claim in Count Seven, the Complaint does not allege that Conway was involved in that decision in any way and it attributes that decision to Halifax Hospital. Moreover, as explained above, Plaintiff has not alleged a constitutionally protected interest in continued participation in the practicum at Halifax Hospital. So even if the Complaint could be read to allege that Conway was in some way involved in the alleged termination, she could not have violated clearly established law by allegedly failing to afford process for the loss of an interest that has never been held to be constitutionally protected.

## II. COUNTS EIGHT TO TEN – THE STATE LAW CLAIMS

### A. Count Eight of the Complaint fails to state a claim against Halifax Hospital for negligent supervision or retention as it does not contain required allegations of notice.

Count Eight alleges a state law negligent supervision and retention claim against Halifax Hospital. ″Negligent supervision occurs when during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further actions such as investigation, discharge, or reassignment.″ *Dep't of Envtl. Prot. v. Hardy*, 907 So. 2d 655, 660 (Fla. 5th DCA 2005) (citing *Garcia v. Duffy*, 492 So. 2d 435, 438–39 (Fla. 2d DCA 1986)). "The plaintiff must allege facts sufficient to show that once an employer received actual or constructive notice of

problems with an employee's fitness, it was unreasonable for the employer not to investigate or take corrective action." *Dep't of Envtl. Prot. v. Hardy*, 907 So. 2d 655, 660 (Fla. 5th DCA 2005) (citing *Garcia*, 492 So. 2d at 441). A negligent supervision claim is "deficient for failure to allege that the [employer] had actual or constructive notice of an issue with [the employee's] unfitness," and "there must be a connection and foreseeability between the employee's employment history and the current tort committed by the employee." *Lee v. Harper*, 328 So. 3d 384, 388 (Fla. 1st DCA 2021). The notice must match the specific danger that later materializes; knowledge of an unrelated propensity will not do. *Garcia*, 492 So. 2d at 441 ("an employer who learns of an employee's conviction for petit theft cannot be deemed liable, on the basis of negligent retention upon constructive or actual notice of that crime, for the employee's subsequent rape of a customer.").

Nowhere in the Complaint does it plead any facts showing that Halifax Hospital had actual or constructive notice, before the alleged February 2025 incidents, of any propensity of Jennings to commit the alleged battery. The Complaint does not plead that Plaintiff was within the zone of foreseeable risk created by the employment or that any supervisory failure proximately caused his injury.

Florida courts have defined negligent retention as occurring when, during the course of employment, (1) the employer becomes aware or should have

become aware of problems with an employee that indicated the employee's unfitness, and (2) the employer fails to take further action such as investigation, discharge, or reassignment. *Garcia*, 492 So. 2d at 439; *Tercier v. Univ. of Miami, Inc.*, 383 So. 3d 847, 853 (Fla. 3d DCA 2023). Plaintiff alleges in the Complaint that Halifax negligently retained Defendant Jennings after it knew or should have known of his unfitness, which includes unauthorized supervision, inappropriate conduct, and risks he posed to students. The Complaint does not allege any facts that placed Halifax Hospital on notice of any alleged problems with Defendant Jennings that would have indicated the alleged unfitness of Defendant Jennings. Therefore, Count Eight should be dismissed as it does not allege any prior notice as required to state a claim for negligent supervision or retention.

**B. Count Nine of the Complaint, a claim against Defendant Jennings and Halifax Hospital for the battery allegedly committed by Jennings, is barred by sovereign immunity as against Halifax Hospital.**

Count Nine alleges a state law claim for battery against Halifax Hospital for the alleged intentional tort of Defendant Jennings. The Complaint alleges that Jennings subjected Plaintiff to "unwanted and offensive physical contact, including prolonged hugs, touching, and boundary-violating physical interactions," that was "sexually suggestive," "coercive," and "boundary-violating." Plaintiff seeks to hold Halifax liable for Jennings' alleged battery on a

single theory—respondeat superior. That theory fails as to Halifax for two independent reasons.

**1. Halifax Hospital cannot be vicariously liable because Jennings' alleged battery was outside the course and scope of his employment as a matter of law.**

To state a claim under a theory of vicarious liability, the pleaded conduct of the employee must fall within the scope of employment. *Fields v. Devereux Found., Inc.*, 244 So. 3d 1193, 1196 (Fla. 2d DCA 2018) (In Florida, an employer is vicariously liable for an employee's tortious conduct where the conduct occurs within the scope of the employment) (citing *Garcia v. Duffy*, 492 So.2d 435, 438 (Fla. 2d DCA 1986)). That is, (1) it must be of the kind the employee was hired to perform, (2) occur substantially within the authorized time and space limits, (3) and be activated at least in part by a purpose to serve the employer. *Sussman v. Florida E. Coast Properties, Inc.*, 557 So. 2d 74, 75–76 (Fla. 3d DCA 1990) (internal citations omitted). In the case of intentional torts, a mere showing that an employee was on duty at the time he assailed someone is not enough to establish that the conduct occurred within the scope. *Fields*, 244 So. 3d at 1196.

Plaintiff alleges that Jennings' contact was "sexually suggestive," "coercive," and "boundary-violating," and he labels the same conduct "sexual harassment." Complaint, Para. 85. Conduct of that character is, by definition, not "of the kind [Jennings] was employed to perform" as a hospital employee, nor

was it "activated . . . by a purpose to serve" Halifax Hospital. *Iglesia Cristiana La Casa Del Senor, Inc. v. L.M.*, 783 So. 2d 353, 356–57 (Fla. 3d DCA 2001). In Ayers v. Wal-Mart Stores, Inc., a court in this District held that when a plaintiff alleged that a co-worker "touched her, hugged her, and made sexual comments, without her consent," the employer would not be liable under a theory of *respondeat superior*. *Ayers v. Wal-Mart Stores, Inc.*, 941 F. Supp. 1163, 1169 (M.D. Fla. 1996). Assuming all pleaded facts in the Complaint are true, as the Court must do at the motion to dismiss stage, whether Defendant Jennings was acting within the course and scope of his employment should be decided as a matter of law in this case. *Id.; United Techs. Corp. v. Mazer*, 556 F.3d 1260 (11th Cir. 2009).

Plaintiff's allegations that Jennings "was aided in committing the battery by the authority, access, and supervisory role Halifax conferred upon him" does not help this claim either. Florida courts have declined to impose vicarious liability for an employee's misconduct merely because the employment gave the employee access to the victim. In *Iglesia Cristiana*, the court rejected vicarious liability even though the tortfeasor "may have had access to [the victim] because of his position," because he "was not engaging in authorized acts or serving the interests of" the employer. *Iglesia Cristiana La Casa Del Senor, Inc.,* 783 So. 2d at 357-58. See also, *Agriturf Mgmt., Inc. v. Roe*, 656 So. 2d 954 at 955 (Fla. 2d DCA 1995). Plaintiff's conclusory invocation of Jennings' "authority, access, and

supervisory role" is precisely the sort of allegation these decisions hold insufficient. Count Nine therefore fails to state a claim against Halifax Hospital under a theory of *respondeat superior*.

**2. Sovereign immunity under section 768.28(9)(a), Florida Statutes, independently bars the battery claim against Halifax Hospital.**

Assuming, *arguendo*, that Jennings' conduct is within the scope of his employment, the battery claim is nevertheless barred by sovereign immunity under Section 768.28(9)(a), Florida Statutes, which states as follows:

> [a]n officer, employee, or agent of the state or of any of its subdivisions may not be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. (Emphasis added.)

While an assault or battery does not "inherently or necessarily" trigger immunity, the entity is immune when the pleaded "actions are committed in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." *Fla. Dep't of Corr. v. Wright*, 417 So. 3d 336, 337–338 (Fla. 4th DCA 2025). Plaintiff alleges that Jennings' conduct was "intentional" and "deliberate, coercive," (Complaint, Paras 122 and 124), and he seeks punitive damages against Halifax for "willful, wanton, reckless, and consciously indifferent conduct" (Complaint, Para. 138(e)). Those allegations

place this claim within the scope of Section 768.28(9)(a)'s exclusion and therefore outside the limited waiver of sovereign immunity. The claim is non-actionable against Halifax; if Jennings committed the intentional, malicious battery alleged, liability lies against him individually, not against Halifax.

**C. Count Ten of the Complaint fails to state a claim for Intentional Infliction of Emotional Distress as a matter of law, and is otherwise a prohibited "shotgun" pleading.**

To prove Intentional Infliction of Emotional Distress (IIED) under Florida law, the plaintiff must prove: (1) deliberate or reckless infliction of mental suffering; (2) by outrageous conduct; (3) which conduct must have caused the suffering; and (4) the suffering must have been severe. *Hart v. United States*, 894 F.2d 1539, 1548 (11th Cir. 1990). In Florida, "the issue of whether or not the activities of the defendant rise to the level of being extreme and outrageous so as to permit a claim for [IIED] is a legal question . . . for the court to decide as a matter of law." *Scelta v. Delicatessen Support Services, Inc.*, 57 F. Supp. 2d 1327, 1357–58 (M.D. Fla. 1999) (internal citations omitted). In the employment context, Florida law has a "strong disfavor" for claims of IIED. *Scelta*, 57 F. Supp. 2d at 1358 (internal citations omitted). "Florida law does not, however, create an absolute bar to a claim of [IIED] in an employment situation." *Id.* Count Ten fails for a number of reasons.

**1. The conduct alleged against Halifax Hospital and Ms. Conway is not extreme and outrageous as a matter of law.**

Florida requires conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278 (Fla. 1985). It is not enough that conduct is intentional, criminal, malicious, or intended to inflict distress. *Id.* As to Ms. Conway, the Complaint alleges that she was a frequently absent supervisor, she was away for a week of vacation, signed a negative evaluation without having observed plaintiff's work, and "fail[ed] to intervene" regarding Jennings' conduct of which she allegedly should have been aware. There is no allegation that Conway engaged in any behavior that meets the high standard for IIED. A negative evaluation and workplace adverse treatment fall far short of the standard. Florida courts hold that even repeated racial slurs, fabricated disciplinary records, false accusations, and constant termination threats are "reprehensible, objectionable, and offensive" but not extreme and outrageous. *Williams v. Worldwide Flight SVCS., Inc.*, 877 So. 2d 869, 870–871 (Fla. 3d DCA 2004). "[L]iability . . . does not extend to mere insults, indignities, threats, or false accusations." *Id.*

As to Halifax Hospital, the institutional conduct alleged: permitting unauthorized supervision, failing to investigate plaintiff's reports, and terminating him from the practicum without process is likewise

administrative/employment conduct that does not meet the threshold. Courts in the Eleventh Circuit "have consistently dismissed claims for [IIED] in discrimination cases," and an employer's negligent supervision, retention of an alleged harasser, and failure to remedy complaints are insufficient as a matter of law. *Ayers v. Wal-Mart Stores, Inc.*, 941 F. Supp. 1163, 1168 (M.D. Fla. 1996). An employer's termination of an employee, even by phone, while the employee was in a "fragile emotional state" after hospitalization, "woefully fails" the standard. *Scott v. Walmart, Inc.*, 528 F. Supp. 3d 1267, 1273–1274 (M.D. Fla. 2021). To the extent Count Ten rests on Halifax's exercise of its right to end the placement, that conduct is privileged: a defendant "is never liable . . . where he has done no more than to insist upon his legal rights in a permissible way." *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278 (Fla. 1985).

**2. Sovereign immunity bars the IIED claim as against Halifax Hospital.**

Under Section 768.28(9)(a), Florida Statutes, there can be no liability against a governmental entity for IIED claims as a matter of law. Because the first element of IIED requires intentional or reckless conduct, courts hold that "§ 768.28(9)(a) shields governmental entities from causes of action for IIED, as IIED requires willful and wanton conduct." *C.P. by & through Perez v. Collier Cnty.*, 145 F. Supp. 3d 1085, 1096 (M.D. Fla. 2015) (The "reckless" requirement of the first element of an IIED claim constitutes willful and wanton conduct) (citing *Samedi*

*v. Miami–Dade County*, 134 F.Supp.2d 1320, 1354 (S.D.Fla.2001)). The Florida Supreme Court applied the same rule to a county hospital: even assuming willful conduct, the hospital "is immune from liability for a willful, wanton or malicious conduct claim against one of its employees," because "[t]he very need to allege and prove willful, wanton or malicious conduct . . . makes the case non-actionable against the county." *Gonzalez v. Metro. Dade Cnty. Pub. Health Tr.*, 651 So. 2d 673, 676 (Fla. 1995). Count Ten expressly alleges that Defendants acted "intentionally, maliciously, or with reckless disregard," Complaint, Para. 134. As such, the claim for IIED is barred as against Halifax Hospital pursuant to Section 768.28(9)(a), Florida Statutes.

**3. Alternatively, Count Ten should be dismissed as an improper "Shotgun" pleading.**

Rule 8(a)(2), Federal Rules of Civil Procedure, states that pleadings must contain a short and plain statement of the claim showing that the pleader is entitled to relief. In addition, the statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 507 (2002) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Complaints that violate Rules 8(a)(2), Federal Rules of Civil Procedure, "are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). The 11th Circuit Court of Appeals has said this about the type of shotgun pleadings found in

Count Ten: "[T]here is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1323.

Plaintiff asserts a claim for IIED against all of the Defendants named in the Complaint. However, IIED, as pled, lumps Halifax Hospital together with all of the Defendants and does not specify who has committed the alleged actions. The Eleventh Circuit recognizes as shotgun pleadings both complaints that assert "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions." *Barmapov v. Amuial*, 986 F.3d 1321, 1325 (11th Cir. 2021).

Here, Ms. Conway and the other Halifax defendants plainly had no role in Stetson's grading or PAR process, and Stetson had no role in Jennings alleged physical contact at Halifax, yet all six are charged collectively. The Eleventh Circuit reaffirmed this in *Barmapov*, condemning a complaint that "lumped together" allegations so that it was "unclear and confusing as to which defendant was being charged with which conduct" and failed to show what each defendant "specifically did to be liable as to each stated count." *Id.* at 1323.

Under *Iqbal*, each defendant's own conduct must be alleged. Here, Plaintiff merely lumps the Defendants together and alleges the same exact facts against all

of the Defendants in an attempt to plead IIED against every single Defendant. The Complaint alleges that "Defendants' conduct, individually and collectively, was extreme, outrageous, and beyond all bounds of decency," followed by a list mixing acts attributable to different actors. This type of pleading is quintessential shotgun pleading and should be dismissed.

## REQUEST FOR RELIEF

**WHEREFORE**, Halifax Hospital and Ms. Anne Conway respectfully request that the Court dismiss Counts Five, Six, Seven, and Ten of the Complaint and Halifax Hospital respectfully requests that the Court dismiss Counts Eight and Nine of the Complaint.

## LOCAL RULE 3.01 (g) CERTIFICATE

I certify that undersigned counsel have conferred in good faith with counsel for Plaintiff in a good-faith effort to resolve the issues raised by this motion. Counsel for Plaintiff opposes the relief requested.

## Certification Under Penalty of Perjury That Artificial Intelligence Was Not Used in the Preparation of This Filing

I have reviewed the Standing Order Requiring Disclosure of the use of artificial intelligence. After diligent inquiry and under penalty of perjury, I certify that artificial intelligence was not utilized in the preparation of this filing in any way. I understand that, whether I represent myself or I am an attorney representing a client, I have an affirmative obligation to read each case cited in

this filing. If I fail to do so and a case upon which I rely does not exist or does not reasonably stand for the cited proposition, I understand that the Court may treat this as a violation of Rule 11 of the Federal Rules of Civil Procedure. I have reviewed Rule 11 of the Federal Rules of Civil Procedure and I understand that this rule applies equally to counsel and unrepresented parties, and I am familiar with the sanctions available for violations of Rule 11. If this certification is made by counsel, I further understand that citation to a case that either does not exist or does not reasonably stand for the cited proposition may be treated as a violation of my oath of candor toward the tribunal and a basis on which my admission to practice in the Middle District of Florida could be revoked or suspended. Further, whether I represent myself or I am an attorney representing a client, I understand that by making this certification under penalty of perjury I could be referred for criminal prosecution if the statements I make here are false.

*/s/ Darren J. Elkind*
ATTORNEY

**CERTIFICATE OF SERVICE**

This is to certify that I electronically filed this with the Clerk of Court using the CM/ECF system, which will automatically send email notifications of such filings to the following attorney of record: Robert S. MacTavish, Esquire, LLG NATIONAL LAW GROUP, 3003 N. Central Avenue, Ste 685, Phoenix, Arizona 85012, (Counsel for Plaintiff), via email at: robert.mactavish@llgnational.com; Kelly DeGance, Esquire, and Samantha Giudici Berdecia, Esquire, of ALEXANDER DEGANCE BARNETT, P.A., 1500 Riverside Avenue, Jacksonville, Florida 32204, via email at: Kelly.degance@adblegal.com, Samantha.giudici@adblegal.com, and mailbox@adblegal.com (Counsel for Defendant, Stetson University) on this 27th day of October 2026.

*/s/ Darren J. Elkind*

Darren J. Elkind, Esquire
Florida Bar No. 050954
Castillana F. Aguy, Esq.
Florida Bar No. 1049635
PAUL, ELKIND, BRANZ & PAUL, LLP
142 E. New York Avenue
DeLand, FL 32724
Tel.: (386) 734-3020
Fax: (386) 734-3096
Email: delkind@paulandelkind.com
caguy@paulandelkind.com
jcoyne@paulandelkind.com
Attorneys for Defendant,
Halifax Hospital Medical Center and
Anne Conway