UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

GREGORY McCORMICK,

Plaintiff, Case No. 6:26-CV-02252-AGM-RMN

v.

STETSON UNIVERSITY, INC., HALIFAX HEALTH MEDICAL CENTER, LANE JENNINGS, JR., in his individual capacity, ANNE CONWAY, in her individual capacity, KAREN McMILLAN, in her individual capacity, THOMAS DELGADO, in his individual capacity.

Defendants.
______________________________________/

**DEFENDANT STETSON UNIVERSITY'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure ("Rule(s)"), Defendant, Stetson University, Inc. ("Stetson" or the "University"), moves to dismiss Counts I, II, III, IV, X, and XI against Stetson because Plaintiff fails to state a claim upon which relief can be granted. In support of its Motion, Stetson states:

## BACKGROUND

This case arises from Plaintiff's enrollment in a graduate program at Stetson.[1] Plaintiff alleges that in January 2025, he began a "graduate-level counseling practicum

[1] (Doc. 1) Complaint ("Compl.") ¶¶ 10, 20.

at Halifax Medical Center through a Stetson-approved clinical placement."[2] Plaintiff further alleges that, shortly thereafter, a Halifax employee, Lane Jennings Jr. ("Jennings"), assumed supervisory authority over Plaintiff.[3] Plaintiff claims that Jennings engaged in repeated unwanted physical contact, including prolonged hugs and touching, and made unidentified sexually suggestive remarks.[4] Plaintiff claims that on or about February 18, 2025, Halifax Health Medical Center ("Halifax") issued Plaintiff a negative evaluation and Stetson removed him from the practicum course on February 21, 2025.[5]

Plaintiff alleges that, shortly thereafter, on February 24, 2025, he reported Jennings' sexual harassment to Stetson, along with other purported complaints.[6] According to Plaintiff, Stetson did not initiate a Title IX investigation.[7] Plaintiff claims that due to his complaints, in March 2025, he was required to retake a course, drop his practicum, and was subject to other sanctions, which delayed his graduation by at least one academic year.[8] Plaintiff appealed these requirements, but was unsuccessful.[9] Plaintiff alleges that he was then retaliated against by Stetson through purported "unjust grading" in his COUN 502 course.[10] Plaintiff appealed the grade, but it was

---

[2] Compl. ¶ 20
[3] Compl. ¶ 22.
[4] Compl. ¶ 24.
[5] Compl. ¶¶ 30, 26.
[6] Compl. ¶¶ 27-28.
[7] Compl. ¶¶ 31-33.
[8] Compl. ¶ 36.
[9] Compl. ¶ 37.
[10] Compl. ¶ 40.

denied.[11]

On September 28, 2026, Plaintiff filed a 40-page, 11 count Civil Complaint ("Complaint") against Stetson, Halifax, and several individuals employed by Halifax. Regarding Stetson, in Count I Plaintiff alleges that Stetson violated Title IX because it was deliberately indifferent to his report of sexual harassment; however, Plaintiff fails to adequately allege that he suffered severe, pervasive and objectively offensive sexual harassment and fails to adequately allege that Stetson had the requisite level of control required to state a claim under Title IX. In Count II, Plaintiff fails to adequately allege that he engaged in protected activity under Title IX, and even if he did, some of the most significant alleged adverse actions occurred before any alleged protected activity.

In Counts III and IV, Plaintiff claims that Stetson violated Section 504 of the Rehabilitation Act and Title III of the Americans with Disabilities Act ("ADA") by failing to provide him with reasonable accommodations due to his disability. Plaintiff, however, fails to allege that he requested any accommodation. In Count X, Plaintiff fails to allege conduct that was sufficiently extreme and outrageous to establish his intentional infliction of emotional distress claim. Plaintiff further fails to state a claim for breach of contract in Count XI, because Plaintiff fails to identify the terms of the contract allegedly breached and fails to adequately allege a breach of any purported agreement. Finally, Plaintiff's Complaint is a shot gun pleading, should be dismissed on those grounds alone, and further seeks damages from Stetson that are not

[11] Compl. ¶¶ 40-41.

recoverable under the law. For these reasons, this Court should dismiss Counts I, II, III, IV, X, and XI.

## MEMORANDUM OF LAW

Under Rule 8, Federal Rules of Civil Procedure ("Rule(s)"), a plaintiff must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 550 (2007)).

A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

The Eleventh Circuit utilizes a two-pronged approach in its application of the holdings in *Iqbal* and *Twombly*. First, courts will "eliminate any allegations in the complaint that are merely legal conclusions." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010). Then, "where there are well-pleaded factual allegations,"

courts will "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Importantly…courts may infer from the factual allegations in the complaint obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct that the plaintiff would ask the court to infer." *Id.*

## I. Plaintiff's Title IX claim for deliberate indifference to Plaintiff's alleged report of sexual harassment in Count I should be dismissed

### A. Plaintiff fails to adequately allege he suffered severe, pervasive and objectively offensive sexual harassment

"To prevail against [Stetson] on a claim of deliberate indifference to sexual harassment, a student must satisfy a four-part test." *C. W. by & through Doe v. Smith*, 178 F.4th 1278, 1286 (11th Cir. 2026). "First, the school must be a Title IX funding recipient." *Id.* "Second, an appropriate person must have actual knowledge of the harassment." *Id.* "Third, the recipient must act with deliberate indifference to known acts of harassment in its programs or activities." *Id.* "This harassment must be sex-based: only sexual harassment is discrimination in the school context under Title IX." *Id.* "Fourth, the harassment must be so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *Id.*[12]

---

[12] The Complaint contains conclusory allegations that Jennings was Plaintiff's supervisor in a clear attempt to shoehorn the analysis into the less rigorous teacher-on-student standard under Title IX. *Hill v. Cundiff*, 797 F.3d 948, 968 (11th Cir. 2015) ("The standard for student-on-student sexual harassment claims is far more rigorous than a claim for teacher-on-student harassment."). However, in order for the teacher-on-student standard to apply, the alleged harasser must be an employee, or at least an authorized agent, of the educational institution. *Gebser v. Lago Vista Independent School District,* 524 U.S. 274 (1998). It is clear on the face of the Complaint that Jennings was not an authorized agent of Stetson, regardless of whether he was an employee of Halifax. Compl. ¶ 22. Indeed, Plaintiff affirmatively alleges that Jennings "was not listed in the site contract, lacked the required credentials,

As an initial matter, the bulk of Plaintiff's allegations in the Complaint are unrelated to "sex-based harassment."[13] In fact, Plaintiff makes only a single allegation of "sex-based harassment" in the Complaint.[14] Specifically, Plaintiff alleges that "[b]etween February 1 and February 21, 2025, Jennings engaged in repeated unwanted physical contact, including prolonged hugs and touching, made sexually suggestive remarks, and attempted to cultivate a dual relationship with Plaintiff, creating a coercive, unsafe, and sexually charged environment."[15] This single allegation of "sex-based harassment" is too vague and conclusory to raise a plausible inference of a Title IX violation. *See Sarver v. Jackson*, 344 F. App'x 526, 530 (11th Cir. 2009) (affirming dismissal of a Title IX claim because the plaintiff did not make any non-conclusory allegations about what the alleged harassment entailed); *Tompkins v. Barker*, No. 2:10CV1015-MEF, 2011 WL 3583413, at *3 (M.D. Ala. July 26, 2011), *report and recommendation adopted*, No. 2:10-CV-1015-MEF, 2011 WL 3584306 (M.D. Ala. Aug. 15, 2011) (dismissing Title IX claim even though the plaintiff alleged that he was "routinely sexually harassed" because the plaintiff did not describe the particulars of any such harassment).

Even if Plaintiff's allegations are not conclusory, they do not rise to the level of "severe, pervasive, and objectively offensive" that is required to state a claim under

---

and had no authorization to supervise counseling students." Compl. ¶ 22. Accordingly, the student-on-student, or peer-on-peer, standard should apply.

[13] *See* Compl. ¶¶ 20-23, 25-45.

[14] Compl. ¶ 24.

[15] Compl. ¶ 24.

Title IX. In evaluating the issue of severity, courts "look to the surrounding circumstances, expectations, and relationships, including, but not limited to, the ages of the harasser and victim, and the number of individuals involved."[16] *C.W. by & through Doe*, 178 F.4th at 1289-90. Courts apply the Title VII hostile environment standard to Title IX hostile environment claims. *See Bird v. Univ. of Fla. Bd. of Trustees*, No. 1:18-CV-221-AW-GRJ, 2020 WL 9550223, at *15 (N.D. Fla. Sept. 1, 2020). Plaintiff fails to adequately plead this element of the claim.

First, the allegation of a purported "dual-relationship" (whatever that means) is vague, not based on sex, and cannot support Plaintiff's Title IX claim. *See DeMarcus v. Univ. of S. Alabama*, 133 F.4th 1305, 1315 (11th Cir. 2025) ("Title IX requires an allegation of *sexual* harassment - a generalized allegation of other misconduct, or even abuse, is not enough."). Construing the remaining allegations in Plaintiff's favor, an unwanted prolonged hug and/or unwanted physical touching is not so severe, pervasive, and objectively offensive that it effectively barred Plaintiff's access to an educational opportunity or benefit (i.e., the practicum course). *See James v. Baldwin Cnty. Bd. of Educ.*, No. CV 1:22-00031-CG-N, 2022 WL 2196425, at *4 (S.D. Ala. May 18, 2022), *report and recommendation adopted*, No. CV 22-0031-CG-N, 2022 WL 2195750 (S.D. Ala. June 17, 2022) (dismissing Title IX claim where the complaint did not contain any allegation that the hug was accompanied by sexual suggestiveness or aggression); *see also Bird v. Bd. of Regents of Univ. Sys. of Georgia*, No. 7:21-CV-00062

[16] In the Complaint, Plaintiff affirmatively alleges that he is an adult. Compl. ¶ 9.

(WLS), 2023 WL 6283322, at *2 (M.D. Ga. Sept. 26, 2023) (a single, tight, full body hug from a supervisor was not severe or pervasive). Similarly, the "sexually suggestive remarks" alleged by Plaintiff do not create an inference of severe and pervasive conduct where there are no factual allegations as to the severity, frequency, or context underlying the conclusory allegation. *See Barreth v. Reyes 1, Inc.* No. 5:19-cv-00320-TES, 2020 WL 4370137, at *6-9 (M.D. Ga. July 29, 2020). Because Plaintiff fails to allege severe and pervasive conduct, Count I should be dismissed.

**B. Plaintiff fails to adequately allege that Stetson had the requisite control over the alleged harasser for liability under Title IX**

"[A] recipient intentionally violates Title IX, and is subject to a private damages action, where the recipient is deliberately indifferent to known acts of discrimination." *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 643 (1999). "Deliberate indifference makes sense as a theory of direct liability under Title IX only where the funding recipient has some control over the alleged harassment." *Id.* at 644. "A recipient cannot be directly liable for its indifference where it lacks the authority to take remedial action." *Id.* "Nothing in the language - or even the legislative history - of Title IX suggests that Title IX imposes liability for the actions of third parties." *S.B. v. Fla. Agric. & Mech. Univ. Bd. of Trs.*, 2019 WL 11254780, at *13 (N.D. Fla. Mar. 1, 2019).

Plaintiff alleges that Jennings was an employee of Halifax and, therefore, he was a third party.[17] Plaintiff, further, fails to allege facts that give rise to a reasonable

---

[17] *See* Compl. ¶ 22.

inference that Jennings was subject to Stetson's disciplinary authority or control as required by Title IX. To the contrary, the factual allegations in the Complaint state that Jennings was not listed on the site contract between Stetson and Halifax, that Jennings lacked the required credentials from Stetson to participate in the practicum course and, crucially, that Jennings had no authorization from Stetson to supervise the University's students.[18] Accordingly, the Complaint is devoid of any factual allegations that create a reasonable inference that Stetson could take any remedial action against Jennings or that the practicum arrangement with Halifax created a "risk of abuse that would have been obvious to school officials." *See Davis*, 526 U.S. at 644; *see also S.B. v. Florida Agric. & Mech. Univ. Bd. of Trustees*, No. 4:16CV613-MW/CAS, 2019 WL 11254780, at *15 (N.D. Fla. Mar. 1, 2019). Simply put, Title IX is not the appropriate avenue to redress the harm alleged by Plaintiff. *See, e.g., Hawkins v. Sarasota Cnty. Sch. Bd.*, 322 F.3d 1279, 1289 (11th Cir. 2003) ("In sum, it bears emphasis that a private damages action under Title IX, grounded as it is on a judicially implied right of action shaped by the Supreme Court … is available only in limited circumstances.").

## II. Plaintiff fails to allege that he participated in protected activity under Title IX and Plaintiff's claims for Title IX retaliation should be dismissed

Courts in the Eleventh Circuit analyze retaliation claims under Title IX using the same framework for claims under Title VII of the Civil Rights Act of 1964. *Kocsis*

[18] Compl. ¶ 22.

*v. Fla. State Univ. Bd. of Trs.*, 788 F. App'x 680, 686 (11th Cir. 2019). Accordingly, "the plaintiff must show: (1) that he engaged in statutorily protected expression; (2) that he suffered an adverse action; and (3) that there is some causal relation between the two events." *Id.* "A person engages in statutorily protected activity under Title IX if the person opposes a practice that Title IX prohibits." *Garrett v. Univ. of S. Fla. Bd. of Trs.*, 448 F. Supp. 3d 1286, 1305 (M.D. Fla. 2020), *aff'd,* 824 F. App'x 959 (11th Cir. 2020). "The person's opposition must be based upon a good faith belief that is objectively reasonable under existing substantive law." *Id* (citing *Kocsis*, 788 F. App'x at 687).

Here, Plaintiff fails to allege that he engaged in statutorily protected activity under Title IX. Importantly, the alleged protected activity at the heart of a Title IX retaliation claim must be a complaint of sex discrimination by a funding recipient. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 ("Retaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination encompassed by Title IX's private cause of action."). The majority of the reports Plaintiff relies upon in asserting his retaliation claim - specifically, alleged "unauthorized supervision," "boundary violations," "CACREP and licensure violations," and "institutional negligence" - do not constitute protected activity under Title IX.[19] There are no allegations that when Plaintiff made these reports he was complaining about any conduct prohibited by Title IX. As a result, the foregoing alleged reports cannot form the basis of Plaintiff's Title IX retaliation claim.

[19] Compl. ¶¶ 28, 55-56.

*See Garrett*, 448 F. Supp. 3d at 1305.

Furthermore, to state a claim for retaliation under Title IX, a plaintiff must oppose the institution's unlawful practices (like deliberate indifference), not just report a peer's misconduct. *Garrett*, 448 F. Supp. 3d at 1305. Plaintiff does not claim in the Complaint that he opposed *Stetson's* alleged unlawful activity under Title IX. Rather, Plaintiff only alleges that he sent multiple written reports to Stetson detailing peer-on-peer harassment by Jennings.[20] As a matter of law, reporting peer misconduct does not constitute opposition to an institutional practice prohibited by Title IX because "Title IX prohibits a university's deliberate indifference to a hostile educational environment - Title IX does not prohibit student-on-student sexual misconduct." *Garrett*, 448 F. Supp. 3d at 1305. Here, the allegations are clear that Plaintiff's internal complaints focused strictly on Jennings' alleged harassing behavior, not on Stetson's response to the reported behavior. Because the allegations establish that Plaintiff complained about Jennings' conduct, not about Stetson's, Plaintiff's complaint does not oppose practices made unlawful by Title IX. *Id.; see also Brown v. Fla. Gulf Coast Univ. Bd. of Trs.*, No. 218CV157FTM29MRM, 2018 WL 5971661, at *8 (M.D. Fla. Nov. 14, 2018) (dismissing a Title IX retaliation claim because the plaintiff's complaints failed to communicate a belief that the university itself was engaging in sex discrimination); *Ross v. Corp. of Mercer Univ.*, 506 F. Supp. 2d 1325, 1346 fn. 37 (M.D. Ga. 2007) (noting that "in the student-on-student harassment context, it is the conduct

[20] Compl. ¶¶ 28, 33.

of the funding recipient and not the alleged harasser that is analyzed, because the recipient may not be liable for damages unless its deliberate indifference subjects its students to harassment"). Accordingly, because Plaintiff failed to allege that he opposed an unlawful practice by Stetson under Title IX, Count II must be dismissed.

Moreover, several of the purported adverse actions occurred before Plaintiff engaged in any alleged protected activity and, as a result, cannot form the basis for a retaliation claim. "In order to show the two things were not entirely unrelated, the plaintiff must generally show that the decision maker was aware of the protected conduct at the time of the adverse employment action." *Brungart v. BellSouth Telecomm., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000). Plaintiff alleges that he complained of sexual harassment by Jennings between February 24 and February 28, 2025.[21] However, Plaintiff alleges that he was removed from his practicum course on February 21, 2025, which was before any alleged protected activity.[22] Plaintiff also alleges that his removal from his practicum course caused him to lose his education grant.[23] Therefore, Plaintiff's removal from the practicum course, which resulted in the loss of the education grant, predates any alleged protected activity and cannot form the basis of a claim for retaliation under Title IX. *Terry v. Sacred Heart Health Sys., Inc.*, No. 3:21CV830-TKW-ZCB, 2022 WL 23011621, at *4 n. 3 (N.D. Fla. Dec. 6, 2022) ("Plaintiff cannot establish causation for any of the alleged adverse actions that

[21] Compl. ¶ 28.
[22] Compl. ¶ 26.
[23] Compl. ¶ 44.

occurred before her protected activity."). For the foregoing reasons, Plaintiff's allegations in paragraphs 70(a) and 70(b) fail to adequately state a claim for retaliation.

Similarly, there are no allegations that any members of the PAR committee or the professor assigning his grade in COUN 502 had knowledge of Plaintiff's alleged protected activity.[24] The Eleventh Circuit has held that to state a claim for retaliation a complaint must include facts allowing a reasonable inference that the decisionmaker actually knew about the protected expression when he acted. *Lowery v. Jefferson Cty. Racing Ass'n*, No. 25-12093, 2026 WL 111705, at *2 (11th Cir. Jan. 15, 2026). Plaintiff's Complaint fails to contain allegations that provide for the required reasonable inference. Accordingly, because Plaintiff has failed to allege any facts to create an inference that the decision makers were aware of his protected activity, Plaintiff's allegations of retaliation in paragraphs 70(c), 70(d), 70(e), 70(f), and 70(g) fail to adequately state a claim for retaliation.

## III. Counts III and IV should be dismissed because Plaintiff fails to adequately state a claim under the Rehabilitation Act or the ADA[25]

In Counts III and IV, Plaintiff alleges that he requested reasonable accommodations and Stetson failed to engage in the interactive process.[26] In the same Counts, Plaintiff also alleges that Stetson retaliated against him for his alleged

---

[24] *See* Compl. ¶¶ 34-40.

[25] Discrimination cases under the Rehabilitation Act and ADA are governed by the same standards and can be analyzed together. *Goldberg v. Fla. Int'l Univ.*, 838 F. App'x 487, 492 (11th Cir. 2020). Accordingly, Stetson addressed Counts III and IV together.

[26] Compl. ¶¶ 66-68, 76-77.

accommodation requests.[27] However, failure to accommodate and retaliation are distinct claims for relief. *Smith v. City of Hapeville*, No. 1:24-CV-1002-MLB, 2026 WL 776303, at *1 (N.D. Ga. Mar. 19, 2026). Plaintiff improperly combines his retaliation and failure to accommodate claims under the Rehabilitation Act in Count III and the ADA in Count IV. As a result, the Complaint constitutes a shotgun pleading and Counts III and IV should be dismissed. *Robinson v. HCA Healthcare Services Florida, Inc.*, No. 8:24-CV-275-TPB-AEP, 2024 WL 4556132, at *4 (M.D. Fla. Oct. 23, 2024).

**A. Plaintiff fails to adequately allege that he requested a reasonable accommodation**

"To state a failure to accommodate claim, it must be shown that the plaintiff (1) is disabled, (2) is an 'otherwise qualified' individual, and (3) was discriminated against by way of the defendant's failure to provide a reasonable accommodation." *J.A.M. v. Nova Se. Univ., Inc.*, No. 0:15-CV-60248-KMM, 2015 WL 4751149, at *4 (S.D. Fla. Aug. 12, 2015), *aff'd,* 646 F. App'x. 921 (11th Cir. 2016). "The duty to provide a reasonable accommodation under the Rehabilitation Act and ADA is not triggered unless a specific demand for an accommodation has been made." *Id.* (citing *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999); *Willis v. Conopco, Inc.*, 108 F.3d 282, 285 (11th Cir. 1997) ("The ADA provides no cause of action for 'failure to investigate' possible accommodations.").

Here, Plaintiff's failure-to-accommodate claim should be dismissed because Plaintiff fails to allege facts identifying the reasonable accommodation that he

[27] Compl. ¶¶ 70-72, 80-82.

requested, much less that the University failed to provide. Instead, Plaintiff resorts to vague catchphrases, asserting that he requested "academic flexibility, support during the practicum crisis, and consideration of his disability-related symptoms."[28] These are not identifiable accommodations; they are broad characterizations of the assistance that Plaintiff believes he should have received. Indeed, "academic flexibility," "support," and "consideration" are concepts, not specific requests for an accommodation. *See, e.g., Doe v. Ne. Univ.*, No. 2:26-CV-00130-LEW, 2026 WL 2568978, at *1 (D. Me. Aug. 31, 2026) (dismissing failure to accommodate claim, in part, because the plaintiff failed to adequately explain her "academic flexibility" request in her complaint); *Nguyen v. Univ. of St. Augustine for Health Scis.*, No. 3:21-CV-173-MMH-MCR, 2023 WL 2374165, at *9 (M.D. Fla. Mar. 6, 2023) (finding that a student did not request a specific accommodation when he only informed his professors of his concerns about his time management on examinations).

Furthermore, an alleged request for "consideration of his disability-related symptoms" is nothing more than a vague plea for leniency, asking Stetson to overlook Plaintiff's academic deficiencies after the fact. Courts have consistently held that the ADA and Rehabilitation Act do not require institutions to retroactively excuse a failure to meet essential academic standards. *J.A.M. v. Nova Se. Univ., Inc.*, 646 F. App'x 921, 926 (11th Cir. 2016) (affirming dismissal of ADA and Rehabilitation Act claims in part because the university "is not required to excuse past misconduct, even

---

[28] Compl. ¶¶ 66, 75.

if that misconduct is linked to a student's mental disability"). Because the accommodations that Plaintiff allegedly sought were not reasonable, Counts III and IV should be dismissed. *Datto v. Florida Atl. Univ.*, No. 20-80532-CV, 2020 WL 14027588, at *9 (S.D. Fla. Sept. 17, 2020).

### B. Plaintiff fails to adequately allege causation and his claims for retaliation under the ADA or Rehabilitation Act should be dismissed

In Counts III and IV, Plaintiff alleges that Stetson retaliated against him for requesting accommodations and "disclosing his disability" by "removing him from his practicum placement; revoking his HRSA grant; initiating a punitive PAR Committee process; requiring him to retake coursework he had already passed; delaying his graduation; and issuing retaliatory grades in Summer 2025."[29] "To establish a retaliation claim, a plaintiff must show: (1) [he] engaged in statutorily protected activity; (2) [he] suffered a materially adverse action; and (3) there is some causal relationship between the two events." *Cameron v. Bd. of Trustees of Univ. of Florida*, No. 1:25CV333-AW-HTC, 2026 WL 2808499, at *4 (N.D. Fla. June 25, 2026) (citing *Mullin v. Sec'y, U.S. Dep't of Veterans Affs.*, 162 F.4th 1296, 1315 (11th Cir. 2025). Plaintiff fails to allege facts suggesting there is a causal connection between his protected activity and the adverse actions alleged. Specifically, in paragraphs 70(a) through 70(f), Plaintiff fails to allege facts that plausibly suggest the decisionmaker(s) of any of the alleged retaliatory acts knew about his protected activity and, as a result, he has failed to state a retaliation claim. *Cameron*, 2026 WL 2808499, at *6; *Lowery v.*

[29] Compl. ¶¶ 70, 80.

*Jefferson Cnty. Racing Ass'n*, No. 25-12093, 2026 WL 111705, at *2 (11th Cir. Jan. 15, 2026).

## IV. Count X should be dismissed because Plaintiff fails to adequately allege "extreme and outrageous conduct"

Florida courts apply a very high standard in evaluating whether the facts alleged are sufficiently outrageous to support a claim for intentional infliction of emotional distress ("IIED"). *Foreman v. City of Port St. Lucie*, 294 F. App'x 554, 557 (11th Cir. 2008). To survive a motion to dismiss a claim for IIED "under Florida law, a plaintiff must plausibly allege the following elements: (1) the defendant's conduct was intentional or reckless; (2) the conduct was outrageous, beyond all bounds of decency, and odious and utterly intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the emotional distress was severe." *Plowright v. Miami Dade Cnty.*, 102 F.4th 1358, 1367-68 (11th Cir. 2024). "In Florida, whether conduct is outrageous enough to support a claim of intentional infliction of emotional distress is a question of law to be decided by the courts at the earliest opportunity, not a question of fact for the jury." *Id.* at 1368. This Court has previously dismissed an IIED claim at the pleading stage where the allegations involved standard academic or administrative discipline, even if conducted insensitively or based on false information. *Mika v. Rollins Coll.*, No. 6:25-CV-1110-JSS-RMN, 2026 WL 679128, at *11 (M.D. Fla. Mar. 11, 2026).

Here, Plaintiff's allegations against Stetson are not "outrageous" as required by Florida law. Stripped of legal conclusions, Plaintiff only alleges in the Complaint that

Stetson failed to initiate a Title IX investigation, removed Plaintiff from his practicum course following a negative evaluation by an external clinical site, issued a letter of remediation through a PAR Committee, and denied Plaintiff subsequent academic appeals.[30] These types of institutional responses are a standard, routine feature of higher education and do not rise to the level of "utterly intolerable in a civilized community." *See Plowright*, 102 F.4th at 1368. Furthermore, a university's purported failure to conduct an adequate investigation or its decision to impose academic sanctions is legally insufficient to state an IIED claim. *See Mika*, 2026 WL 679128, at *11 (dismissing student's IIED claim because an institution's administrative discipline and allegedly flawed investigation did not constitute outrageous conduct). None of the allegations in the Complaint are "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Garcia v. Carnival Corp.*, 838 F. Supp. 2d 1334, 1339 (S.D. Fla. 2012). Courts have routinely dismissed IIED claims when even more outrageous conduct was at issue as compared to this case. *See Johnson v. Fla. Dep't of Juv. Just.*, No. 8:24-CV-2195-WFJ-NHA, 2024 WL 5125538, at *9 (M.D. Fla. Dec. 16, 2024) (collecting cases). Accordingly, Count X should be dismissed.

## V. Count XI should be dismissed because Plaintiff fails to adequately allege breach of contract

In Florida, the relationship between a student and a private educational institution is solely contractual in nature. *Sharick v. Se. Univ. of Health Scis., Inc.*, 780

---

[30] Compl. ¶¶ 26, 31, 34, 41.

So. 2d 136, 138 (Fla. 3d DCA 2000). An educational institution "may set forth the terms under which it will admit and subsequently graduate students who subject themselves to the rules, regulations, and regimen of the [school]." *Sirpal v. Univ. of Miami*, 509 F. App'x 924, 929 (11th Cir. 2013). These terms are generally derived from the school's publications at the time of enrollment, such as the student handbook. *Id.*; *see also Sharick*, 780 So. 2d at 138. However, the "university's publications are terms of an implied-in-fact contract rather than an express contract." *Jarzynka v. St. Thomas Univ. of Law*, 310 F. Supp. 2d 1256, 1268-69 (S.D. Fla. 2004).

Count XI does not contain sufficient factual allegations to establish a breach of contract by Stetson. This is, in part, because Plaintiff fails to incorporate any of the 45 paragraphs of his general factual allegations into Count XI.[31] *See Green v. Intuit, Inc.*, No. 8:23-CV-1039-TPB-AAS, 2024 WL 621606, at *4 (M.D. Fla. Feb. 14, 2024) ("The complaint also fails to incorporate by reference into each count any relevant allegations from earlier in the complaint, leaving in question whether the general allegations . . . bear any relation to the four counts set forth [in the complaint].").

Further, even if the general allegations were incorporated by reference into Count XI, Plaintiff's breach of contract claim remains deficient. "An implied contract requires the same elements as an express contract - a mutual intent to contract - and differs only in the parties' method of expressing mutual consent." *Smith v. Casey*, 1:12-CV-23795-UU, 2014 WL 11878422, at *4 (S.D. Fla. Oct. 29, 2014). "At a minimum,

[31] *See* Compl. ¶¶ 136-142.

a claim for breach of contract must identify 'the actual terms of the contract allegedly breached.'" *Toca v. Tutco, LLC*, 430 F. Supp. 3d 1313, 1324 (S.D. Fla. 2020) (citing *Herssein Law Grp. v. Reed Elsevier, Inc.*, 594 F. App'x 606, 608 (11th Cir. 2015)). Here, Plaintiff generally cites to a plethora of documents that purportedly constitute the binding contract: "published standards, policies, accreditation requirements, and contractual agreements with practicum sites."[32] However, Plaintiff does not identify the actual terms that Stetson allegedly breached and Count XI should be dismissed. *Tercier v. Univ. of Miami, Inc.*, 383 So. 3d 847, 852 (Fla. 3d DCA 2023) (affirming dismissal of the complaint where the student "failed to identify a specific contractual promise the University breached").

Similarly, Plaintiff fails to adequately allege any actual breach. In paragraph 140, Plaintiff makes broad, conclusory allegations but fails to include any underlying factual allegations to support the alleged breaches.[33] Plaintiff has failed to plead any facts showing that Stetson did anything that contravened a specific express contractual obligation. A mere dissatisfaction with academic decisions or outcomes is not a breach of contract. *See District Bd. of Trustees of Miami Dade College v. Verdini*, 339 So. 3d 413 (Fla. 3d DCA 2022) (dismissing complaint where nothing in the complaint or attachments expressly required the College to provide specific services in exchange for fees). Accordingly, Count XI should be dismissed.

## VI. Plaintiff's Complaint is a "shotgun pleading" that should be dismissed

[32] Compl. ¶ 136.
[33] *See* Compl. ¶ 140.

Plaintiff fails to incorporate any factual allegations set forth in paragraphs one through 45 into any of subsequent claims, which is "another shotgun-type problem not falling precisely into one of the four main categories." *Green v. Intuit, Inc.*, No. 8:23-CV-1039-TPB-AAS, 2024 WL 621606, at *4 (M.D. Fla. Feb. 14, 2024); *see also Barnes v. Samberg*, No. 8:10-CV-737-T-30AEP, 2011 WL 6754007, at *2 (M.D. Fla. Dec. 22, 2011) (noting on dismissal of the amended complaint that none of the claims "incorporate the introductory fact section by reference, and most fail to otherwise include facts supporting each claim. As a result, it is very unclear what facts, if any, are meant to support each claim."); *Cannie v. Selene Fin., LLC*, No. 3:25-CV-1418-WWB-LLL, 2026 WL 3027219, at *5 (M.D. Fla. Aug. 10, 2026) (finding the second amended complaint deficient because it did not indicate which facts apply to which causes of action); *Moore v. Univ. of Miami Hosp.*, No. 24-22878-CIV, 2024 WL 6968813, at *2 (S.D. Fla. July 31, 2024) (holding that the complaint was a shotgun pleading and subject to dismissal where the plaintiff failed to incorporate factual allegations into any of the counts).

Moreover, in Count X, Plaintiff alleges IIED against "all Defendants" and fails to specify who committed which alleged acts. In the Eleventh Circuit, complaints that assert "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions" are a type of shotgun pleading. *Barmapov v. Amuial*, 986 F.3d 1321, 1325 (11th Cir. 2021). Similarly, as discussed above, Plaintiff's failure to separately plead his claims for failure to accommodate and retaliation in Counts III and IV also constitutes a shotgun pleading. *Robinson v. HCA*

*Healthcare Services Florida, Inc.*, No. 8:24-CV-275-TPB-AEP, 2024 WL 4556132, at *4 (M.D. Fla. Oct. 23, 2024). Because Plaintiff's Complaint is a shotgun pleading, it should be dismissed in its entirety.

### VII. Plaintiff seeks monetary and emotional distress damages that are not recoverable under Title III of the ADA, the Rehabilitation Act, or Title IX

In Counts I-IV, Plaintiff seeks monetary and emotional distress damages from Stetson that are unrecoverable under the cited statutory frameworks.[34] With regard to Count IV, it is well-settled that "[t]here is no private right of action for money damages under Title III of [the ADA], which provides for money damages only where the civil action is initiated by the Attorney General." *Berkery v. Kaplan*, 518 F. App'x 813, 814 (11th Cir. 2013) (affirming dismissal of a Title III ADA claim that sought only monetary relief). Accordingly, Plaintiff's request for money damages in Count IV should be stricken.

Plaintiff's request for emotional distress damages under the Rehabilitation Act and Title IX should be stricken for the same reasons. The Supreme Court has held that "emotional distress damages are not recoverable under the Spending Clause antidiscrimination statutes." *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 230 (2022) (evaluating emotional distress damages in the context of Section 504 of the Rehabilitation Act). Post-*Cummings*, this Court has recognized that emotional distress damages are equally unavailable under Title IX because it is also a Spending Clause antidiscrimination statute. *See Williams v. Orange Cnty. Sch. Bd.*, No. 6:22-cv-1773-

[34] Compl. ¶¶ 54, 62, 72, 82, 138.

RBD-DCI, 2023 WL 12081120, at *2 (M.D. Fla. May 3, 2023) (noting that district courts "routinely reject emotional distress claims in the Title IX context given *Cummings*"). Consequently, Plaintiff's request for emotional distress damages under both the Rehabilitation Act and Title IX in Counts, I, II and III should be stricken.

Finally, to the extent Plaintiff intends to assert any standalone claims for injunctive relief, those claims must also be dismissed. Because Plaintiff's underlying substantive allegations fail to state a plausible violation of the ADA, Rehabilitation Act, or Title IX as a matter of law, there is no viable cause of action to anchor an equitable remedy.

Dated this the 6th day of November, 2026.

Respectfully submitted,

ALEXANDER DEGANCE BARNETT, P.A.

By: */s/ Samantha Giudici Berdecia*

Kelly DeGance
Florida Bar No. 0606022
E-mail: kelly.degance@adblegal.com
Samantha Giudici Berdecia
Florida Bar No. 0058667
E-mail: samantha.giudici@adblegal.com
Email: mailbox@adblegal.com
1500 Riverside Avenue
Jacksonville, Florida 32204
(904) 345-3277 Telephone
(904) 345-3294 Facsimile
*Attorneys for Defendant Stetson University*

**LOCAL RULE 3.01(g) CERTIFICATION**

Pursuant to Local Rule 3.01(g), Local Rules, United States District Court, Middle District of Florida, counsel for Stetson conferred with counsel for Plaintiff via email on November 5, 2026. Counsel for Plaintiff has stated that Plaintiff opposes the relief sought in the Motion.

*/s/ Samantha Giudici Berdecia*
ATTORNEY

**Certification Under Penalty of Perjury That Artificial Intelligence Was Not Used in the Preparation of This Filing**

I have reviewed the Standing Order Requiring Disclosure of the use of artificial intelligence. After diligent inquiry and under penalty of perjury, I certify that artificial intelligence was not utilized in the preparation of this filing in any way. I understand that, whether I represent myself or I am an attorney representing a client, I have an affirmative obligation to read each case cited in this filing. If I fail to do so and a case upon which I rely does not exist or does not reasonably stand for the cited proposition, I understand that the Court may treat this as a violation of Rule 11 of the Federal Rules of Civil Procedure. I have reviewed Rule 11 of the Federal Rules of Civil Procedure and I understand that this rule applies equally to counsel and unrepresented parties, and I am familiar with the sanctions available for violations of Rule 11. If this certification is made by counsel, I further understand that citation to a case that either does not exist or does not reasonably stand for the cited proposition may be treated as a violation of my oath of candor toward the tribunal and a basis on which my

admission to practice in the Middle District of Florida could be revoked or suspended. Further, whether I represent myself or I am an attorney representing a client, I understand that by making this certification under penalty of perjury I could be referred for criminal prosecution if the statements I make here are false.

*/s/ Samantha Giudici Berdecia*
ATTORNEY

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will electronically send a notice of electronic filing to: Rober S. Mactavish, Phoenix Corporate Tower, 3003 N. Central Avenue, Suite 685, Pheonix, AZ 85012 (robert.mactavish@llgnational.com), Darren J. Elkind, Esquire, Castillana F. Aguy, Esq., Paul, Elkind, Branz & Paul, LLP, 142 E. New York Avenue DeLand, FL 32724, (delkind@paulandelkind.com)(caguy@paulandelkind.com)(jcoyne@paulandelkind.com), and Brandon T. Byers, Esq., R. Brooks Casey, Esq., Wright & Casey, P.A., 340 North Causeway, New Smyrna Beach, Florida 32169, (brandon@surfcoastlaw.com), (bcasey@surfcoastlaw.com), (tduncan@surfcoastlaw.com).

*/s/ Samantha Giudici Berdecia*
ATTORNEY