**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | | |
|---|---|---|
| GREGORY McCORMICK,<br>*Plaintiff*,<br><br>v.<br><br>STETSON UNIVERSITY, INC.; HALIFAX HEALTH MEDICAL CENTER; LANE JENNINGS, JR., in his individual capacity; ANNE CONWAY, in her individual capacity; KAREN McMILLAN, in her individual capacity; THOMAS DELGADO, in his individual capacity,<br>*Defendants*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 6:26-cv-02252-AGM-RMN |

___________________________________/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS HALIFAX HEALTH MEDICAL CENTER AND ANNE CONWAY'S MOTION TO DISMISS COUNTS FIVE, SIX, SEVEN, EIGHT, NINE, AND TEN OF THE COMPLAINT**

Plaintiff Gregory McCormick ("Plaintiff"), by and through undersigned counsel, hereby files this Response in Opposition to Defendants Halifax Health Medical Center and Anne Conway's Motion to Dismiss Counts Five, Six, Seven, Eight, Nine, and Ten of the Complaint (Doc. 21) and, in support thereof, states as follows:

## INTRODUCTION

Defendants Halifax Hospital Medical Center ("Halifax") and Anne Conway seek dismissal of Counts Five through Ten by recasting detailed factual allegations as isolated administrative decisions, unsupported supervisory failures, and conclusory assertions of institutional liability. The Complaint alleges far more. Plaintiff alleges that Halifax permitted an individual who was neither designated nor qualified to supervise him to assume supervisory authority during the designated supervisor's repeated absences; that Jennings used that authority to engage in repeated unwanted physical contact, sexually suggestive remarks, and other boundary violations; and that, after Plaintiff reported this conduct and the related supervisory violations, Halifax terminated his clinical placement without notice, explanation, investigation, or an opportunity to respond. The Complaint further alleges that Conway, Plaintiff's designated supervisor, was frequently absent during the placement, failed to intervene despite circumstances indicating Jennings had assumed supervisory authority, and issued a negative evaluation despite not personally observing Plaintiff's work.

At this stage, the Court must accept the Complaint's factual allegations as true and draw all reasonable inferences in Plaintiff's favor. The Court's task is not to determine whether Plaintiff will ultimately prevail, but whether the Complaint plausibly states claims for relief. Defendants' Motion repeatedly

invites the Court to disregard Plaintiff's factual allegations, resolve disputed factual questions in Defendants' favor, and accept Defendants' competing characterization of the events underlying this action. Rule 12(b)(6) permits none of those things.

The Complaint identifies the individuals involved, the supervisory structure through which the alleged misconduct occurred, the reports made by Plaintiff, the adverse actions that followed, and the institutional practices Plaintiff contends contributed to those events. Accepting those allegations as true, the Complaint plausibly states each challenged claim and provides Defendants with fair notice of the factual and legal bases for the relief sought. Accordingly, the Court should deny the Motion to Dismiss.

Alternatively, if the Court determines that any claim has not been pleaded with sufficient specificity, Plaintiff respectfully requests leave to amend rather than dismissal with prejudice.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint, not the merits of the plaintiff's claims. In considering such a motion, the Court must accept all well-pleaded factual allegations as true and construe them in the light most favorable to the

plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Hunt v. Aimco Props.*, L.P., 814 F.3d 1213, 1221 (11th Cir. 2016).

To survive dismissal, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the pleaded facts permit a reasonable inference that the defendant is liable for the alleged misconduct. *Iqbal*, 556 U.S. at 678. Although legal conclusions and formulaic recitations of the elements do not suffice, the plaintiff need not prove his claims or establish that liability is more likely than not at the pleading stage. Id. at 678–79.

The Court must evaluate the complaint as a whole, accept its well-pleaded factual allegations as true, and draw reasonable inferences in Plaintiff's favor. At this stage, the Court does not resolve factual disputes or determine whether Plaintiff will ultimately prove the allegations.

The Federal Rule of Civil Procedure 8(d)(2) permits a party to plead claims or defenses in the alternative, and Rule 8(d)(3) expressly permits a party to state separate claims regardless of consistency. Accordingly, the sufficiency of each challenged claim must be assessed under its governing legal elements, rather than rejected merely because Plaintiff advances alternative theories of liability.

Finally, dismissal with prejudice is not warranted where a pleading deficiency may be cured by amendment. Federal Rule of Civil Procedure 15(a)(2) instructs that leave to amend should be freely given when justice so requires. *Foman v. Davis*, 371 U.S. 178, 182 (1962). If the Court identifies any deficiency in the allegations, Plaintiff respectfully requests leave to amend before any challenged claim is dismissed with prejudice.

## ARGUMENT

### I. The Complaint Alleges Facts Supporting Plaintiff's Claims Under 42 U.S.C. § 1983.

Defendants' challenge to Counts Five, Six, and Seven fails to account for the distinct constitutional theories alleged. The Complaint asserts institutional liability against Halifax, retaliation based on Plaintiff's reports of misconduct, and deprivation of protected interests arising from the termination of his clinical placement. Each claim must be evaluated under its own governing legal standard. Plaintiff does not contend that Halifax is liable merely because it employed Jennings or that Conway is liable simply because she held a supervisory position.

### A. The Complaint Alleges Institutional Practices That Permitted Unauthorized Supervision and Created the Conditions for the Constitutional Violations.

A governmental entity may be liable under 42 U.S.C. § 1983 when an official policy or longstanding custom causes the deprivation of a constitutional right. *Monell v. Department of Social Services*, 436 U.S. 658, 690–91, 694 (1978). Liability must arise from conduct attributable to the entity itself, rather than respondeat superior. *Connick v. Thompson*, 563 U.S. 51, 60–61 (2011).

The Complaint alleges institutional failures extending beyond Jennings' individual misconduct. Halifax's clinical-placement arrangement designated Conway as Plaintiff's supervisor, yet Jennings, who was not identified as an authorized supervisor and allegedly lacked the required qualifications, assumed supervisory authority over Plaintiff during Conway's absences. (Compl. ¶¶ 22–23, 86–89, 113–118.) The Complaint further alleges that Halifax failed to enforce the designated supervisory arrangement, verify supervisory qualifications, monitor those exercising authority over clinical students, or implement appropriate safeguards. (Id. ¶¶ 89, 98, 107, 115–118.)

These allegations concern the administration of Halifax's clinical-placement program, not merely an employee's conduct unrelated to his duties. Halifax allegedly permitted Jennings to exercise supervisory authority outside

the established arrangement and failed to provide the oversight necessary to protect students subject to that authority. The resulting misconduct occurred within the very institutional structure that Halifax was responsible for administering.

Defendants rely on *Connick and Ireland v. Prummell*, 53 F.4th 1274 (11th Cir. 2022), to argue that Plaintiff alleges only an isolated incident. Plaintiff does not rely on the incident alone to establish a widespread custom. Rather, the Complaint identifies the supervisory arrangement, Halifax's departure from it, and the institutional failures that allegedly permitted Jennings to exercise unauthorized authority over Plaintiff. Moreover, municipal liability may arise from a single decision attributable to an official with final policymaking authority. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–83 (1986).

The Complaint further alleges that, after Plaintiff reported Jennings' misconduct and supervisory violations, Halifax failed to take corrective action and terminated Plaintiff's clinical placement. (Compl. ¶¶ 94–101, 115–118.) Considered together, these allegations support Plaintiff's theory that Halifax's administration and oversight of the clinical-placement program enabled the alleged constitutional violations and that its response to Plaintiff's reports compounded the resulting harm. Defendants' effort to characterize the

allegations as nothing more than individual employee misconduct does not account for the institutional practices specifically challenged.

Accordingly, the Court should evaluate Halifax's alleged conduct as a whole rather than dismissing the claim by treating each institutional failure in isolation. Plaintiff requests that the Monell claim proceed or, alternatively, that any identified pleading deficiency be addressed through leave to amend.

### B. Plaintiff's Reports Concerned Misconduct and Institutional Safety, and the Public-Employee Speech Framework Does Not Govern His Claim.

Count Six alleges that Halifax retaliated against Plaintiff after he reported Jennings' misconduct, unauthorized supervisory activities, and violations of professional and clinical-placement requirements. (Compl. ¶¶ 93–102.) Defendants characterize these reports as personal grievances and rely on *Connick v. Myers*, 461 U.S. 138 (1983), and *Henry v. City of Tallahassee*, 149 F. Supp. 2d 1324 (N.D. Fla. 2001), to argue that Plaintiff's speech was not protected.

That argument overlooks Plaintiff's status. Plaintiff was a graduate student participating in a clinical practicum, not a Halifax employee. The public-employee speech framework, including the balancing inquiry associated with *Henry* and *Connick*, addresses the competing interests implicated when a

government employer regulates its employees' speech. It does not automatically govern a private citizen's retaliation claim against a governmental entity.

In *Bennett v. Hendrix*, 423 F.3d 1247, 1250–54 (11th Cir. 2005), the Eleventh Circuit recognized that a private citizen may pursue a First Amendment retaliation claim where the government's conduct would likely deter a person of ordinary firmness from exercising constitutional rights. The court specifically distinguished the standard applicable to private citizens from the adverse-employment-action framework applicable to public employees.

Here, Plaintiff alleges that he reported more than a personal disagreement with a supervisor. His reports concerned an individual exercising supervisory authority without authorization or required qualifications, inappropriate conduct toward a clinical student, and failures implicating professional standards and the safety and integrity of a clinical-placement program. (Compl. ¶¶ 94–98.) Those subjects implicate institutional accountability and the proper administration of a clinical setting.

The fact that Plaintiff was personally affected by the reported misconduct does not transform the subject matter into a purely private grievance. The reports concerned conduct occurring within a public medical institution and the qualifications and conduct of an individual exercising authority over a student in a clinical environment. Their content and context

support the inference that Plaintiff was reporting matters extending beyond a personal dispute.

The Complaint also adequately alleges adverse action and causation at the pleading stage. Plaintiff alleges that Halifax terminated his clinical placement on February 21, 2025, immediately following the reports concerning Jennings and the supervisory violations, without providing a documented performance basis or an opportunity to respond. (Compl. ¶¶ 94–101.) The close temporal relationship, together with the alleged absence of prior performance concerns and the nature of the reported misconduct, supports a reasonable inference of retaliatory motivation.

Under *Bennett*, the alleged termination from a clinical placement would also be sufficient to deter a person of ordinary firmness from reporting misconduct. 423 F.3d at 1254. Plaintiff was deprived of the clinical opportunity necessary to progress toward his graduate degree, and the Complaint alleges resulting educational and financial consequences.

Defendants' reliance on the public-employee speech framework does not establish that Plaintiff's reports were unprotected. The allegations concerning the content of his reports, the immediate adverse action, and the surrounding circumstances are sufficient to permit the retaliation claim to proceed.

### C. The Due Process Claim Requires a More Focused Inquiry Into the Interest Allegedly Deprived.

Count Seven alleges that Halifax deprived Plaintiff of protected interests by terminating his clinical placement without notice, an explanation, or an opportunity to respond. (Compl. ¶¶ 103–111.) Defendants argue that Plaintiff had no property interest in a particular clinical placement and rely on Board of *Regents v. Roth*, 408 U.S. 564 (1972).

The Constitution does not create a property interest in every educational opportunity or clinical rotation. Such an interest must arise from an independent source, including state law, a contract, or an established rule or understanding that gives rise to a legitimate claim of entitlement. Id. at 577. The relevant inquiry, however, is not simply whether Plaintiff had an unconditional right to remain at Halifax. It is whether the governing arrangements and practices imposed limits on Halifax's authority to terminate his placement without process.

The Complaint alleges that Plaintiff's clinical placement was a required component of his graduate counseling program and that Halifax exercised direct control over his supervision, evaluation, and continued participation in that placement. (Compl. ¶¶ 13–23, 103–108.) Plaintiff further alleges that Halifax's decision to remove him immediately affected his academic progress and ability to satisfy his degree requirements. Those allegations provide the

context for determining whether the clinical-placement arrangement created an entitlement protected by due process. The fact that Stetson administered Plaintiff's degree program does not, by itself, resolve whether Halifax's own policies, agreements, or established practices imposed procedural obligations when terminating a student's placement.

Plaintiff further alleges that his removal carried significant academic and professional consequences extending beyond the loss of a single placement opportunity. At this stage, the Court need not determine the ultimate nature or scope of the protected interest asserted. The question is whether Plaintiff has plausibly alleged that Halifax exercised authority over a required component of his educational program and deprived him of that opportunity without notice or a meaningful opportunity to respond. The Complaint plausibly alleges such circumstances.

At this stage, Plaintiff maintains that the circumstances surrounding his removal must be considered in light of the arrangements governing his placement and the consequences of Halifax's decision. If the Court concludes that the Complaint does not adequately identify the source of the asserted property interest or sufficiently plead the elements of a liberty-interest claim, Plaintiff requests leave to amend rather than dismissal with prejudice.

**D. Conway's Individual Liability Must Be Evaluated Based on Her Own Conduct and Its Causal Connection to the Alleged Violations.**

Defendants argue that Conway cannot be liable under § 1983 because the Complaint does not allege her personal participation in the constitutional violations. Plaintiff agrees that supervisory liability cannot rest solely on respondeat superior. A supervisor may be liable, however, when she personally participates in the alleged violation or when her own actions or omissions have a sufficient causal connection to the constitutional deprivation. *Braddy v. Florida Department of Labor & Employment Security*, 133 F.3d 797, 801–02 (11th Cir. 1998).

The Complaint identifies multiple affirmative acts and omissions attributable to Conway herself. Plaintiff alleges that Conway was his designated supervisor, was frequently absent during the placement, permitted Jennings to assume supervisory authority during those absences, failed to address resulting supervisory irregularities and misconduct, and issued a negative evaluation despite allegedly lacking firsthand knowledge of Plaintiff's performance. (Compl. ¶¶ 22–23, 30, 88, 113–115.)

The negative evaluation is particularly significant because Conway took an affirmative action, not merely an omission arising from her supervisory

position. Its relationship to the decision to terminate Plaintiff's placement must be considered in evaluating her individual involvement.

The Complaint also alleges that Jennings assumed supervisory responsibilities during Conway's absences and that Conway failed to address the resulting supervisory violations and inappropriate conduct. (Id. ¶ 88.) The relevant inquiry is whether Conway knew of the alleged misconduct, had an opportunity to intervene, and participated in or contributed to the challenged treatment. Those questions should be evaluated based on Conway's conduct, not her supervisory title alone.

Qualified immunity must be evaluated based on Conway's own alleged actions and the particular constitutional rights implicated. *Alcocer v. Mills*, 906 F.3d 944, 950–51 (11th Cir. 2018). Plaintiff does not contend that every supervisory failure or unsupported evaluation violates the Constitution. Here, the Complaint attributes specific conduct to Conway that must be evaluated in connection with the alleged retaliation and due-process deprivation. If the Court concludes that the Complaint does not sufficiently establish Conway's knowledge or causal role in a particular constitutional violation, Plaintiff requests leave to amend to clarify those allegations.

### E. Conway Is Not Entitled to Qualified Immunity at the Pleading Stage.

Qualified immunity protects government officials performing discretionary functions unless their conduct violates clearly established constitutional rights. At the motion-to-dismiss stage, however, the Court must accept Plaintiff's factual allegations as true and draw all reasonable inferences in Plaintiff's favor.

The Complaint alleges that Conway was Plaintiff's designated supervisor, was frequently absent during Plaintiff's placement, permitted Jennings to assume supervisory authority during those absences, failed to address supervisory irregularities and misconduct, and issued a negative evaluation despite allegedly lacking firsthand knowledge of Plaintiff's performance. (Compl. ¶¶ 22-23, 30, 88, 113-115.) The Complaint further alleges that Conway's actions and omissions contributed to the constitutional deprivations asserted in Counts Five through Seven.

Whether Conway knew of the alleged misconduct, whether she could have intervened, and whether her conduct was causally connected to Plaintiff's alleged injuries are fact-intensive questions that cannot be resolved on the pleadings. Because the qualified-immunity analysis depends upon disputed factual issues concerning Conway's knowledge, involvement, and role in the

challenged conduct, dismissal on qualified-immunity grounds is inappropriate at this stage of the proceedings.

## II. The Complaint Adequately Alleges Negligent Supervision and Retention Against Halifax.

Count Eight alleges that Halifax negligently permitted Jennings to exercise supervisory authority over Plaintiff despite his alleged lack of authorization and required qualifications, failed to provide appropriate oversight, and failed to take corrective action concerning his conduct. (Compl. ¶¶ 112–120.)

Under Florida law, negligent supervision and retention arise when an employer knew or should have known of an employee's unfitness and failed to take reasonable corrective action such as investigating, discharge, or reassignment. *Garcia v. Duffy*, 492 So. 2d 435, 438–41 (Fla. 2d DCA 1986). The employer's notice must relate to the employee's unfitness and the foreseeable risk of harm; liability cannot rest solely on the fact that an employee later committed a tort.

Defendants argue that Plaintiff has not alleged Halifax knew Jennings had a propensity to commit battery with sexual overtones before the alleged conduct occurred. Plaintiff does not dispute that an employer must have notice of the employee's unfitness. The relevant inquiry, however, is not limited to

whether Halifax anticipated a particular sexual act. It also concerns whether Halifax knew or should have known that Jennings was unfit to exercise the supervisory authority he allegedly assumed over a clinical student.

The Complaint alleges that Conway was the designated supervisor under the clinical-placement arrangement, that Jennings was not identified as an authorized supervisor, and that Jennings nevertheless assumed supervisory responsibilities during Conway's absences. (Compl. ¶¶ 22–23, 113–118.) These allegations concern Halifax's assignment and oversight of personnel exercising authority over clinical students. The alleged failure to verify Jennings' qualifications, enforce the designated supervisory arrangement, or monitor his activities provides a factual basis for examining whether Halifax knew or should have known that he was unfit to perform those responsibilities. (Id. ¶¶ 115–118.)

The Complaint also alleges that Plaintiff reported Jennings' misconduct and supervisory violations and that Halifax failed to investigate or take appropriate corrective action. (Id. ¶¶ 94–98, 115–118.) Those reports provide a separate basis for examining Halifax's response after receiving notice. The timing and content of those reports, together with Halifax's subsequent conduct, bear on whether it failed to take reasonable corrective measures.

Defendants rely on *Garcia* and *Lee v. Harper*, 328 So. 3d 384 (Fla. 1st DCA 2021), for the requirement that an employer have notice of an employee's

unfitness. The Complaint identifies the alleged deficiencies in Halifax's assignment and oversight of Jennings, as well as Plaintiff's subsequent reports. Whether those facts ultimately establish the requisite notice and foreseeability is a question distinct from whether the allegations plausibly support the claim at the pleading stage. Count Eight should therefore proceed.

**III. The Battery Claim Against Halifax Should Not Be Dismissed Solely Because the Alleged Contact Was Intentional.**

Count Nine alleges that Jennings intentionally subjected Plaintiff to unwanted physical contact, including prolonged hugs and other inappropriate touching, under circumstances that rendered the contact offensive, unwelcome, and nonconsensual. (Compl. ¶¶ 121-129.) Plaintiff further alleges that Jennings exercised supervisory authority over him within Halifax's clinical-placement program and that the alleged conduct occurred while Jennings was acting in that supervisory role. (Id. ¶¶ 22-23, 121-129.)

Under Florida law, a battery occurs when a person intentionally causes harmful or offensive contact with another without consent. Defendants do not contend that the Complaint fails to allege the elements of a battery. Instead, Halifax argues that it cannot be liable because Jennings' alleged conduct necessarily fell outside the scope of his employment and is barred by section 768.28(9)(a), Florida Statutes.

At the pleading stage, however, the Court must accept Plaintiff's factual allegations as true and draw all reasonable inferences in Plaintiff's favor. Rule 8 expressly permits a plaintiff to plead alternative and even inconsistent theories of liability. Fed. R. Civ. P. 8(d)(2)-(3). Plaintiff alleges both that Jennings exercised supervisory authority over him within Halifax's clinical-placement program and that Halifax permitted Jennings to assume that authority despite his alleged lack of authorization and qualifications. (Compl. ¶¶ 22-23, 113-118.) Whether Jennings' conduct ultimately falls within or outside the scope of employment presents a fact-intensive inquiry that should not be resolved by accepting Halifax's characterization of the allegations at the pleading stage.

Defendants rely upon section 768.28(9)(a), Florida Statutes, which excludes governmental liability for employee conduct committed outside the scope of employment or committed in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. The intentional nature of an alleged battery does not automatically resolve the applicability of that statutory exception. See *Richardson v. City of Pompano Beach*, 511 So. 2d 1121, 1122-24 (Fla. 4th DCA 1987). Rather, courts examine the specific conduct alleged and the relationship between that conduct and the employee's assigned responsibilities.

Defendants also cite *Iglesia Cristiana La Casa Del Señor, Inc. v. L.M.*, 783 So. 2d 353 (Fla. 3d DCA 2001), and *Agriturf Management, Inc. v. Roe*, 656 So. 2d 954 (Fla. 2d DCA 1995), for the proposition that employers generally are not liable for employee conduct motivated by purely personal purposes. Plaintiff does not dispute that principle. Plaintiff alleges, however, that Jennings' access to, authority over, and interactions with Plaintiff arose from the supervisory role Halifax allegedly permitted him to exercise within the clinical-placement program. (Compl. ¶¶ 22-23, 121-129.) Discovery is necessary to determine the nature and extent of that authority, Halifax's knowledge of Jennings' role, and the circumstances under which the alleged conduct occurred.

At a minimum, the allegations are sufficient to state a battery claim against Jennings. To the extent Halifax seeks dismissal based upon factual assertions concerning scope of employment, motivation, authority, or the application of sovereign immunity, those issues are more appropriately addressed on a developed factual record rather than on a Rule 12(b)(6) motion. Accordingly, Count Nine should not be dismissed at this stage of the proceedings.

**IV. Count Ten Should Not Be Dismissed Without Considering the Alleged Conduct Attributable to Each Defendant.**

Count Ten alleges intentional infliction of emotional distress arising from Jennings' repeated unwanted physical contact, sexually suggestive conduct, abuse of supervisory authority, Defendants' response to Plaintiff's reports, and the resulting termination of Plaintiff's clinical placement. (Compl. ¶¶ 130-135.)

Under Florida law, a claim for intentional infliction of emotional distress requires deliberate or reckless conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community. *Hart v. United States*, 894 F.2d 1539, 1548 (11th Cir. 1990); *Metropolitan Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278-79 (Fla. 1985).

Plaintiff acknowledges that Florida applies a demanding standard to IIED claims. Count Ten, however, does not rest upon a poor evaluation, an adverse administrative decision, or an ordinary workplace dispute. Rather, it is based upon allegations that Jennings repeatedly subjected Plaintiff to unwanted physical contact, sexually suggestive conduct, and boundary violations while exercising authority over Plaintiff in a clinical-training environment, followed by Defendants' alleged failure to adequately address the reported misconduct. (Compl. ¶¶ 22-30, 88, 94-98, 121-135.)

When accepted as true and viewed in the light most favorable to Plaintiff, the Complaint alleges repeated unwanted physical contact and sexually suggestive conduct by an individual exercising supervisory authority over Plaintiff within a professional clinical setting. Florida courts evaluate alleged outrageousness in context, including the relationship between the parties and the authority exercised by the alleged wrongdoer. At the pleading stage, the Court cannot conclude as a matter of law that such allegations are insufficient to support a claim for intentional infliction of emotional distress.

Defendants' reliance on *Williams v. Worldwide Flight Services, Inc.*, 877 So. 2d 869 (Fla. 3d DCA 2004), and *Scott v. Walmart, Inc.*, 528 F. Supp. 3d 1267 (M.D. Fla. 2021), does not compel dismissal. Plaintiff does not dispute that ordinary employment disagreements, disciplinary actions, or administrative decisions generally do not satisfy the extreme-and-outrageous conduct requirement. Count Ten, however, is not premised solely upon such conduct. The Complaint alleges repeated unwanted physical contact and sexually suggestive conduct occurring within a supervisory relationship, together with alleged failures to respond appropriately after Plaintiff reported that conduct. Those allegations must be considered in their entirety and in the context alleged by the Complaint.

Nor is Count Ten an impermissible collective pleading against all Defendants. The Complaint attributes distinct conduct to each Defendant.

Jennings allegedly engaged in the unwanted physical contact and sexually suggestive conduct. Conway allegedly failed to fulfill designated supervisory responsibilities and participated in actions affecting Plaintiff's placement despite allegedly lacking direct knowledge of Plaintiff's performance. Halifax allegedly permitted unauthorized supervision, failed to provide adequate oversight, and failed to respond appropriately after Plaintiff reported misconduct. (Compl. ¶¶ 22-30, 88, 94-98, 113-118, 121-135.) Any determination of Count Ten's sufficiency must therefore be made on a defendant-by-defendant basis and in light of the specific conduct attributed to each party.

Defendants further contend that § 768.28(9)(a), Florida Statutes, bars the IIED claim against Halifax. Even if the Court ultimately concludes that sovereign immunity precludes recovery against Halifax under Count Ten, that conclusion would not warrant dismissal of the claim against Jennings in his individual capacity. Section 768.28(9)(a) expressly preserves employee liability for conduct committed in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. See *Gonzalez v. Metropolitan Dade County Public Health Trust*, 651 So. 2d 673, 676 (Fla. 1995); *C.P. ex rel. Perez v. Collier County*, 145 F. Supp. 3d 1085, 1096-97 (M.D. Fla. 2015). Jennings' alleged personal misconduct must therefore be evaluated under the facts alleged in the Complaint and not categorically insulated by virtue of his employment relationship.

Accordingly, Count Ten plausibly alleges conduct sufficient to survive dismissal at this stage. At a minimum, the claim against Jennings in his individual capacity should proceed, and Count Ten should not be dismissed wholesale without separately evaluating the conduct and defenses applicable to each Defendant.

**V. Alternatively, Plaintiff Should Be Granted Leave to Amend.**

Even if the Court concludes that one or more challenged counts are not pleaded with sufficient specificity, dismissal with prejudice would be inappropriate. Rule 15 embodies a strong federal policy favoring resolution of claims on their merits rather than through technical pleading deficiencies. Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend should be freely given when justice so requires. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

This action remains in its earliest stages. No scheduling order has been entered, no discovery has occurred, and Defendants cannot demonstrate undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice, or futility. To the extent the Court determines that additional factual allegations are necessary regarding Halifax's policies and customs, Conway's personal involvement, the source of Plaintiff's asserted due-process interest, the scope of Defendants' authority over Plaintiff's clinical placement, or any other challenged issue, those matters can be addressed through amendment.

Accordingly, Plaintiff respectfully submits that the Complaint adequately states each challenged claim and that the Motion to Dismiss should be denied in its entirety. However, if the Court determines that any count is deficient, Plaintiff respectfully requests leave to amend before any claim is dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants Halifax Health Medical Center and Anne Conway's Motion to Dismiss Counts Five, Six, Seven, Eight, Nine, and Ten of the Complaint (Doc. 21) in its entirety. Alternatively, should the Court determine that any challenged count is insufficiently pleaded, Plaintiff respectfully requests leave to amend before dismissal with prejudice is considered.

Respectfully Submitted,

Dated: November 10, 2026

**LLG NATIONAL LAW GROUP**



Robert S. Mactavish
Florida Bar Number 0596388
Phoenix Corporate Tower
3003 N. Central Avenue
Suite 685
Phoenix, AZ 85012

P: 575-517-6542
robert.mactavish@llgnational.com
*Attorney for Plaintiffs*

## **CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5(b)(3), this document is being filed electronically and service shall be through the Court's transmission facilities on all persons appearing before this Court.



______________________________

Robert S. Mactavish

## **Certification Under Penalty of Perjury That Artificial Intelligence Was Used in the Preparation of This Filing**

I have reviewed the Standing Order Requiring Disclosure of the use of artificial intelligence. Artificial intelligence was used in the preparation of this filing in the following way: our firm’s paralegal who helped write the initial draft of this pleading used Grammarly. Although it is AI, it is not generative AI and only deals with grammar, spelling, sentence structure, etc. Grammarly does not generate content. However, under penalty of perjury, I certify that before filing, I personally reviewed Rule 11 of the Federal Rules of Civil Procedure and I personally read every case. I understand that if a case upon which I rely does not exist or does not reasonably stand for the cited proposition, the Court may treat this as a violation of Rule 11 of the Federal Rules of Civil Procedure. I have reviewed Rule 11 of the Federal Rules of Civil Procedure and I understand that this rule applies equally to counsel and unrepresented parties, that as the person signing this filing, I am the person who will be held responsible for its contents even if it was prepared by someone else, and I am familiar with the sanctions available for violations of Rule 11. If this

certification is made by counsel, I further understand that citation to a case that either does not exist or does not reasonably stand for the cited proposition may be treated as a violation of my oath of candor toward the tribunal and a basis on which my admission to practice in the Middle District of Florida could be revoked or suspended. Further, whether I represent myself or I am an attorney representing a client, I understand that by making this certification under penalty of perjury I could be referred for criminal prosecution if the statements I make here are false.



Robert S. Mactavish