**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

GREGORY McCORMICK, )
*Plaintiff*, )
)
v. ) Case No. 6:26-cv-02252-AGM-RMN
)
STETSON UNIVERSITY, INC.; )
HALIFAX HEALTH MEDICAL )
CENTER; LANE JENNINGS, JR., in )
his individual capacity; ANNE )
CONWAY, in her individual capacity; )
KAREN McMILLAN, in her )
individual capacity; THOMAS )
DELGADO, in his individual capacity, )
*Defendants*. )

______________________________/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT LANE JENNINGS, JR.'S MOTION TO DISMISS**

Plaintiff Gregory McCormick ("Plaintiff"), by and through undersigned counsel, hereby files this Response in Opposition to Defendant Lane Jennings, Jr.'s Motion to Dismiss (Doc. 23) and, in support thereof, states as follows:

## INTRODUCTION

Defendant Lane Jennings, Jr. ("Jennings") seeks dismissal by minimizing his personal involvement in the conduct alleged in the Complaint and characterizing Plaintiff's claims as challenges to decisions made by others.

The Complaint alleges otherwise. Plaintiff alleges that Jennings assumed supervisory authority over him despite lacking the authorization and qualifications to serve in that role; repeatedly subjected him to unwanted physical contact, sexually suggestive remarks, and other professional boundary violations while exercising authority within the clinical-placement program; and engaged in conduct underlying Plaintiff's reports of misconduct and the adverse consequences that followed. These allegations establish Jennings' direct involvement in the events giving rise to Plaintiff's constitutional and state-law claims.

At this stage, the Court must accept the Complaint's well-pleaded factual allegations as true and draw all reasonable inferences in Plaintiff's favor. The question is not whether Plaintiff will ultimately prevail, but whether the facts alleged plausibly establish entitlement to relief. Jennings' Motion repeatedly asks the Court to disregard Plaintiff's allegations, resolve factual disputes in Jennings' favor, and conclude that Jennings bears no responsibility for the conduct and resulting injuries alleged. Those determinations are inappropriate on a motion to dismiss.

The Complaint identifies Jennings' specific conduct, his exercise of supervisory authority, the reports concerning that conduct, and the resulting injuries alleged by Plaintiff. Taken together, these allegations provide Jennings fair notice of the claims asserted against him and plausibly establish

his individual involvement in the conduct underlying those claims. Therefore, Jennings' Motion to Dismiss should be denied.

Alternatively, should the Court determine that any claim requires additional factual specificity, Plaintiff respectfully requests leave to amend pursuant to Federal Rule of Civil Procedure 15(a)(2).

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint, not the merits of the plaintiff's claims. In considering such a motion, the Court must accept all well-pleaded factual allegations as true and construe them in the light most favorable to the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016).

To survive dismissal, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the pleaded facts permit a reasonable inference that the defendant is liable for the alleged misconduct. *Iqbal*, 556 U.S. at 678. Although legal conclusions and formulaic recitations of the elements do not suffice, Plaintiff need not prove his claims or establish that liability is more likely than not at the pleading stage. *Id.* at 678–79.

The Court must evaluate the Complaint as a whole, accepting its well-pleaded factual allegations as true and drawing all reasonable inferences in Plaintiff's favor. The Court does not weigh evidence, resolve factual disputes, or determine whether Plaintiff will ultimately prove his allegations on a motion to dismiss.

Federal Rule of Civil Procedure 8(d)(2) permits a party to plead claims or defenses in the alternative, and Rule 8(d)(3) expressly permits a party to state separate claims regardless of consistency. Thus, alternative theories of liability are not grounds for dismissal merely because they are pleaded in the same action. Each challenged claim must instead be evaluated under its governing legal elements.

Finally, dismissal with prejudice is inappropriate where a pleading deficiency may be cured by amendment. Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend should be freely given when justice so requires. *Foman v. Davis*, 371 U.S. 178, 182 (1962). If the Court identifies any deficiency in the allegations, Plaintiff respectfully requests leave to amend before any challenged claim is dismissed with prejudice.

## ARGUMENT

### I. The Complaint Specifically Alleges Jennings' Personal Participation in the Conduct Giving Rise to Plaintiff's Claims.

Jennings' Motion repeatedly attempts to characterize the Complaint as challenging decisions made by Halifax or other individuals rather than conduct attributable to Jennings himself. The Complaint alleges otherwise.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that a defendant, acting under color of state law, personally participated in the deprivation of a constitutional right. Here, the Complaint identifies Jennings by name and attributes specific conduct directly to him. Plaintiff alleges that Jennings assumed supervisory authority over him despite not being the designated supervisor, exercised authority over Plaintiff during Conway's repeated absences, engaged in repeated unwanted physical contact, made sexually suggestive remarks, cultivated inappropriate personal interactions, and committed additional professional boundary violations within the clinical-placement environment. (Compl. ¶¶ 22–29, 85–88.)

The Complaint further alleges that Plaintiff reported Jennings' conduct and that adverse action followed those reports. (Compl. ¶¶ 94–101.) Jennings' attempt to isolate the ultimate decision affecting Plaintiff's clinical placement from the conduct that allegedly prompted Plaintiff's reports overlooks the factual sequence pleaded in the Complaint. Plaintiff alleges more than mere

association with the events or supervisory status over other participants; he identifies Jennings' own conduct and alleges that it formed part of the circumstances giving rise to the constitutional injuries asserted. Whether Jennings' conduct ultimately establishes the requisite constitutional violation and causation must be evaluated under the elements of each claim, not resolved by disregarding the specific allegations against him.

Moreover, Jennings' direct participation in the alleged physical contact and other boundary violations independently supports Plaintiff's state-law claims against him. Those claims rest on Jennings' own alleged conduct, not merely on decisions made by Halifax or other individuals.

Accepting the allegations as true and construing them in Plaintiff's favor, the Complaint sufficiently identifies Jennings' personal involvement in the conduct underlying the claims asserted against him. Jennings' attempt to avoid individual liability by attributing the events exclusively to others therefore provides no basis for dismissing the claims.

## II. Counts Five Through Seven Plausibly State Constitutional Claims.

### A. Count Five Adequately Alleges a Constitutional Violation.

Jennings argues that Count Five fails as a matter of law. That argument overlooks the nature of the conduct alleged and improperly separates Jennings' actions from the circumstances in which they occurred.

The Complaint alleges that Jennings assumed supervisory authority over Plaintiff within the clinical-training environment and repeatedly subjected him to unwanted physical contact, sexually suggestive remarks, coercive interactions, and other professional boundary violations. (Compl. ¶¶ 24–29, 85–88.) These allegations describe more than ordinary supervisory disagreements or isolated instances of inappropriate workplace conduct. They allege repeated sexually suggestive and unwanted conduct by an individual exercising authority over Plaintiff in a setting where Plaintiff was required to participate to complete his professional training.

Count Five must be evaluated based on the alleged conduct as a whole, including the nature of Jennings' interactions with Plaintiff, the authority Jennings exercised, and the circumstances surrounding the alleged misconduct. Plaintiff is not required to prove his allegations at this stage. Rather, the Complaint must be evaluated under the plausibility standard, accepting its well-pleaded factual allegations as true and drawing reasonable inferences in Plaintiff's favor. *Iqbal*, 556 U.S. at 678.

Jennings' effort to characterize the allegations as merely inappropriate personal interactions does not resolve whether the conduct alleged supports Plaintiff's Equal Protection claim. That determination must account for the alleged sexually suggestive conduct, the supervisory relationship, and the

surrounding circumstances pleaded in the Complaint. Therefore, dismissal of Count Five is unwarranted.

**B. Count Six Adequately Alleges First Amendment Retaliation.**

Jennings argues that Plaintiff's reports were merely personal grievances, that he did not personally participate in the retaliation, and that the alleged conduct did not violate clearly established law. Each argument overlooks the substance of Plaintiff's reports and the allegations connecting Jennings to the retaliatory response.

Count Six alleges that, between February 21 and February 28, 2025, Plaintiff reported to Halifax and Stetson faculty that Jennings had engaged in sexual harassment, unauthorized clinical supervision, boundary violations, and conduct implicating professional ethics and licensure requirements. (Compl. ¶¶ 94–96.) These were not simply complaints about an unfavorable evaluation or unfair treatment. Plaintiff reported alleged professional misconduct by an employee of a public hospital system, implicating the integrity and safety of a clinical training environment, student welfare, and compliance with professional standards. (Id. ¶¶ 93–96.) That the misconduct also affected Plaintiff personally does not strip his reports of their broader institutional and public significance.

Jennings's reliance on *Williams v. Alabama State University*, 102 F.3d 1179, 1183 (11th Cir. 1997), is misplaced. *Williams* addressed internal university-administration complaints and personal grievances that did not sufficiently implicate the public's perception of educational quality. Here, Plaintiff reported alleged sexual harassment, professional-boundary violations, unauthorized clinical supervision, and potential ethical and licensure violations within a public hospital's clinical training environment. These allegations concern the professional integrity of clinical education and the standards governing individuals entrusted with students and patients. Indeed, *Maples v. Martin*, 858 F.2d 1546, 1552–53 (11th Cir. 1988), recognizes that complaints bearing on the quality and professional integrity of an educational program may implicate matters of public concern. Plaintiff's reports therefore cannot be reduced to the personal grievances addressed in *Williams*.

Nor does the claim depend on treating Plaintiff as a public employee. Plaintiff was a graduate student participating in a clinical practicum, not a Halifax employee speaking pursuant to government job duties. The public-employee speech framework of *Pickering v. Board of Education*, 391 U.S. 563 (1968), and *Connick v. Myers*, 461 U.S. 138 (1983), does not render a student's reports of alleged professional misconduct unprotected merely because the misconduct directly affected him. Under *Bennett v. Hendrix*, 423 F.3d 1247,

1250, 1254 (11th Cir. 2005), the adverse-action inquiry is whether the challenged conduct would likely deter a person of ordinary firmness from exercising First Amendment rights.

The Complaint also sufficiently alleges Jennings's personal participation. Count Six expressly alleges that Jennings knew of Plaintiff's protected reports and that the individual Halifax defendants, including Jennings, responded with retaliation rather than investigating the reported misconduct. (Compl. ¶ 97.) It further alleges that Halifax terminated Plaintiff from his practicum on February 21, 2025, barred him from returning, and provided neither notice nor an opportunity to respond. (Id. ¶ 98.) The termination allegedly followed Plaintiff's reports, was not based on a contemporaneous performance concern, and was intended to punish him and silence further complaints. (Id. ¶¶ 98–99.)

These allegations must be read together with those identifying Jennings as the subject of the reports. They place him directly at the center of the events, allege his knowledge of Plaintiff's protected activity, and expressly connect him to the retaliatory response. The timing of the termination and the alleged absence of a performance-based justification further support the inference of retaliatory motive. Plaintiff need not establish the defendants' internal decision-making process or identify every communication among them at the pleading stage. He must allege facts connecting Jennings to the constitutional

violation, which Count Six does. See *Henley v. Payne*, 945 F.3d 1320, 1331 (11th Cir. 2019). This is not an attempt to impose liability based solely on Jennings's employment or supervisory position.

The adverse action is equally clear. Removal from a required clinical practicum, coupled with a prohibition against returning and the resulting loss of an opportunity to complete a required component of a graduate program, is substantially more than a minor inconvenience. It threatens a student's educational progress and would deter a person of ordinary firmness from reporting misconduct. The inquiry under *Bennett* is whether the conduct would likely deter an ordinary person, not whether Plaintiff ultimately abandoned his complaints. 423 F.3d at 1254.

Qualified immunity does not warrant dismissal. The right at issue is not an abstract right to complain about perceived unfairness. It is the right to report alleged sexual harassment, professional misconduct, and violations of ethical and licensure standards within a public hospital's clinical training environment without retaliation by a state actor who knows of those reports. The Eleventh Circuit has long recognized that government officials may not retaliate against individuals for exercising First Amendment rights. *Bennett*, 423 F.3d at 1255–56. And *Williams* does not establish that the speech alleged here was unprotected; it addressed a materially different category of internal administrative complaints and personal grievances. At minimum, Jennings

cannot obtain dismissal by characterizing Plaintiff's reports as personal dissatisfaction while disregarding their alleged professional and institutional significance.

Count Six is not a shotgun pleading. It identifies the constitutional right, the protected reports, the defendants allegedly aware of those reports, the retaliatory response, the adverse action, and the resulting harm. (Compl. ¶¶ 93–102.) It specifically names Jennings among those who allegedly knew of Plaintiff's reports and participated in the retaliatory response. (Id. ¶ 97.) The allegations thus provide Jennings fair notice of the conduct and constitutional violation for which Plaintiff seeks to hold him accountable. See *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015).

Count Six plausibly alleges protected speech, adverse action, and a causal connection to Jennings's own conduct. His arguments rely on competing characterizations of the allegations and the defendants' respective roles, not a pleading deficiency. The Court should deny Jennings's motion to dismiss Count Six, including his request for qualified immunity.

### C. Count Seven Adequately Alleges a Due Process Violation.

Count Seven alleges that Plaintiff was deprived of an educational opportunity essential to completing his graduate counseling program without constitutionally adequate process. (Compl. ¶¶ 103–111.) Although the

Constitution does not itself create property interests, such interests may arise from independent sources, including institutional policies, rules, and mutually explicit understandings. *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).

Here, Plaintiff's claimed interest is supported by Stetson's published Student Handbook, which establishes specific procedures governing the evaluation, remediation, and continued participation of students in the counseling program. Those procedures address concerns involving academic, ethical, professional, and clinical progress and provide for advising, formal Professional Assessment Review ("PAR"), written remediation requirements, an opportunity to address identified deficiencies, and specified avenues of appeal. (Student Handbook, p. 23.)

The March 31, 2025, PAR Remediation Letter demonstrates that these procedures were invoked in Plaintiff's case. Following the March 17 PAR meeting, the faculty imposed a remediation plan requiring Plaintiff to withdraw from his Practicum course, take a graduate leave of absence for Fall 2025, and remain away from clinical experience for two semesters. The plan further required extensive coursework, additional counseling sessions, written reflections, mock counseling sessions, and supervision. Plaintiff could not return to Practicum unless he achieved a score of at least three in every applicable competency area and received a final assessment from the PAR Committee. (PAR Remediation Letter, Mar. 31, 2025.)

These requirements materially affected Plaintiff's ability to continue the clinical training necessary to complete his graduate program. The letter also required Plaintiff to sign within three business days, with his signature acknowledging agreement to the remediation plan and confirming that he had no suggested improvements or additions. If Plaintiff disagreed, he was required to submit a formal appeal within that same three-business-day period. Thus, although Stetson convened a PAR meeting and provided an appeal mechanism, the process culminated in a predetermined and substantial interruption of Plaintiff's clinical training, accompanied by extensive conditions governing his return.

The relevant question is not simply whether Stetson held a meeting or provided a document labeled a remediation plan. It is whether the procedures afforded Plaintiff meaningful notice of the grounds for the action, a meaningful opportunity to respond to the proposed requirements, and a fair opportunity to challenge the resulting restrictions on his continued clinical education. The Handbook's prescribed procedures, considered alongside the requirements and appeal deadline imposed by the March 31 letter, provide a factual basis for Plaintiff's allegation that the process afforded was inadequate.

At the pleading stage, Plaintiff need not establish that he will ultimately prove a protected property interest or that the procedures were constitutionally insufficient. He must plausibly allege an entitlement to the

educational opportunity at issue and a deprivation without adequate process. The Complaint's allegations, considered together with Stetson's published procedures and the PAR Remediation Letter, support that claim. Consequently, dismissal of Count Seven is unwarranted.

## III. Jennings Is Not Entitled to Qualified Immunity at the Pleading Stage.

Qualified immunity protects officials only when their conduct does not violate a clearly established constitutional right. *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009). The inquiry requires an individualized assessment of the defendant's conduct and the particular constitutional right allegedly violated. *Alcocer v. Mills*, 906 F.3d 944, 951–52 (11th Cir. 2018).

Although qualified immunity may be raised on a motion to dismiss, dismissal is appropriate only when the Complaint fails to allege a violation of a clearly established constitutional right. *Corbitt v. Vickers*, 929 F.3d 1304, 1310–11 (11th Cir. 2019). In conducting that analysis, the Court must accept the factual allegations as true and draw all reasonable inferences in Plaintiff's favor. *Id.* at 1311. Thus, Jennings' entitlement to immunity must be evaluated based on the facts alleged in the Complaint, not competing characterizations of his conduct.

Nor must Plaintiff identify a prior decision involving identical facts. Although the clearly established inquiry must be particularized to the circumstances alleged, existing law may provide fair warning even in a novel factual setting. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Here, Plaintiff alleges more than an isolated administrative disagreement: he alleges sexually suggestive conduct and unwanted physical contact by an individual exercising supervisory authority, followed by adverse consequences after Plaintiff reported the conduct and challenged the supervisory arrangement. (Compl. ¶¶ 22–30, 85–101, 121–135.) Those allegations must be considered together, and Jennings cannot obtain dismissal simply by separating the alleged conduct into isolated incidents or characterizing the resulting consequences as ordinary academic decisions.

Jennings argues that the constitutional rights at issue were not clearly established. But Plaintiff does not allege merely an unfavorable academic decision or an ordinary disagreement with a supervisor. As explained above, the Complaint plausibly alleges violations of Plaintiff's rights to equal protection, freedom from retaliation, and procedural due process. Jennings' reliance on decisions involving materially different circumstances does not establish that the conduct alleged here was constitutionally permissible. Nor does the academic or clinical-placement context insulate independently unconstitutional conduct from review.

Because the Complaint plausibly alleges constitutional violations and Jennings' personal involvement, qualified immunity should not be resolved in his favor at this stage. The Court should therefore deny dismissal on that basis.

**IV. Count Nine States a Claim for Battery.**

Count Nine alleges that Jennings intentionally subjected Plaintiff to unwanted physical contact, including prolonged hugs and other offensive touching, without Plaintiff's consent. (Compl. ¶¶ 121–129.)

Under Florida law, a battery occurs when a defendant intentionally causes harmful or offensive contact with another person without consent. The Complaint alleges deliberate physical contact, not accidental touching, and specifically describes conduct that Plaintiff found offensive and unwelcome. Those allegations, viewed in Plaintiff's favor, sufficiently plead intentional, nonconsensual physical contact.

Jennings' arguments concerning the nature, significance, and characterization of the alleged touching challenge the factual circumstances surrounding the conduct, not the sufficiency of the pleaded elements. Whether the contact occurred as alleged, whether it was offensive, and whether Plaintiff consented are factual questions that cannot be resolved on a motion to dismiss. The Complaint therefore adequately states a battery claim.

**V. Count Ten States a Claim for Intentional Infliction of Emotional Distress.**

Under Florida law, intentional infliction of emotional distress requires outrageous conduct that exceeds all bounds of decency and causes severe emotional distress. *Hart v. United States*, 894 F.2d 1539, 1548 (11th Cir. 1990); *Metropolitan Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278–79 (Fla. 1985).

Plaintiff alleges substantially more than an ordinary workplace or educational dispute. The Complaint alleges repeated unwanted physical contact, sexually suggestive conduct, abuse of supervisory authority, and continuing boundary violations within a clinical-training environment. (Compl. ¶¶ 22–30, 121–135.) These allegations must be considered collectively and in the context of the supervisory relationship in which the conduct allegedly occurred. Plaintiff does not rely merely on unfavorable evaluations, administrative decisions, or professional disagreements, but on repeated personal conduct that allegedly crossed physical and professional boundaries while Jennings exercised authority over Plaintiff.

The alleged conduct must also be considered in terms of its psychological and emotional impact. Repeated unwanted physical contact, particularly when accompanied by sexually suggestive behavior and occurring within a relationship marked by a significant imbalance of authority, can reasonably be experienced as invasive, intimidating, and sexually inappropriate. Such

conduct implicates personal autonomy, bodily integrity, and psychological well-being. A person subjected to repeated unwanted touching in circumstances reasonably perceived as sexual is not merely experiencing an uncomfortable professional interaction. The resulting distress must be evaluated in light of the nature of the contact, the surrounding circumstances, the supervisory relationship, and the cumulative effect of the conduct.

The cases cited by Jennings, including *Williams v. Worldwide Flight Services, Inc.*, 877 So. 2d 869 (Fla. 3d DCA 2004), and *Scott v. Walmart, Inc.*, 528 F. Supp. 3d 1267 (M.D. Fla. 2021), do not establish that the conduct alleged here is categorically insufficient. Unlike claims premised principally on ordinary workplace disputes or isolated employment-related conduct, Plaintiff alleges repeated unwanted physical and sexually suggestive conduct within an ongoing supervisory relationship. The nature, frequency, and context of that conduct distinguish this case from the circumstances Jennings invokes.

Although Florida imposes a demanding standard for IIED claims, the Court must evaluate the specific conduct alleged rather than reduce the Complaint to an ordinary educational or supervisory disagreement. Accepting those allegations as true and drawing reasonable inferences in Plaintiff's favor, Count Ten sufficiently alleges conduct that may satisfy Florida's outrageousness standard and should survive dismissal.

## VI. The Complaint Is Not a Shotgun Pleading.

The Eleventh Circuit has identified four categories of shotgun pleadings, generally involving complaints that fail to separate distinct causes of action, incorporate every preceding allegation into each successive count, assert multiple claims against multiple defendants without specifying which defendant is responsible for which conduct, or otherwise fail to give defendants adequate notice of the claims against them. *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1321-1323 (11th Cir. 2015).

The Complaint does none of those things. It provides a detailed factual narrative, separates each cause of action into distinct counts, identifies the defendants against whom each claim is asserted, and alleges specific facts supporting each count. The allegations provide a sufficient basis for each Defendant to identify the conduct attributed to him and the legal claims asserted against him.

Indeed, Jennings' ability to submit a count-by-count analysis addressing individual claims and factual allegations demonstrates that he possesses precisely the notice required by Rules 8 and 10. His disagreement with the factual allegations or legal theories does not transform an otherwise understandable complaint into a shotgun pleading.

The Complaint provides fair notice of the claims and the grounds upon which they rest and should not be dismissed as a shotgun pleading.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant Lane Jennings, Jr.'s Motion to Dismiss in its entirety. Alternatively, should the Court determine that any challenged claim is insufficiently pleaded, Plaintiff respectfully requests an opportunity to amend the Complaint before any claim is dismissed with prejudice.

Respectfully Submitted,

Dated: November 10, 2026

**LLG NATIONAL LAW GROUP**



Robert S. Mactavish
Florida Bar Number 0596388
Phoenix Corporate Tower
3003 N. Central Avenue
Suite 685
Phoenix, AZ 85012
P: 575-517-6542
robert.mactavish@llgnational.com
*Attorney for Plaintiffs*

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5(b)(3), this document is being filed electronically and service shall be through the Court's transmission facilities on all persons appearing before this Court.



Robert S. Mactavish

**Certification Under Penalty of Perjury That Artificial Intelligence Was Used in the Preparation of This Filing**

I have reviewed the Standing Order Requiring Disclosure of the use of artificial intelligence. Artificial intelligence was used in the preparation of this filing in the following way: our firm's paralegal who helped write the initial draft of this pleading used Grammarly. Although it is AI, it is not generative AI and only deals with grammar, spelling, sentence structure, etc. Grammarly does not generate content. However, under penalty of perjury, I certify that before filing, I personally reviewed Rule 11 of the Federal Rules of Civil Procedure and I personally read every case. I understand that if a case upon which I rely does not exist or does not reasonably stand for the cited proposition, the Court may treat this as a violation of Rule 11 of the Federal Rules of Civil Procedure. I have reviewed Rule 11 of the Federal Rules of Civil Procedure and I understand that this rule applies equally to counsel and unrepresented parties, that as the person signing this filing, I am the person who will be held responsible for its contents even if it was prepared by someone else, and I am familiar with the sanctions available for violations of Rule 11. If this certification is made by counsel, I further understand that citation to a case that either does not exist or does not reasonably stand for the cited proposition may be treated as a violation of my oath of candor toward the tribunal and a basis on which my admission to practice in the Middle District of Florida could be revoked or suspended. Further, whether I represent myself or I am an

attorney representing a client, I understand that by making this certification under penalty of perjury I could be referred for criminal prosecution if the statements I make here are false.



Robert S. Mactavish