**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | | |
|---|---|---|
| GREGORY McCORMICK,<br>*Plaintiff*,<br><br>v.<br><br>STETSON UNIVERSITY, INC.; HALIFAX HEALTH MEDICAL CENTER; LANE JENNINGS, JR., in his individual capacity; ANNE CONWAY, in her individual capacity; KAREN McMILLAN, in her individual capacity; THOMAS DELGADO, in his individual capacity,<br>*Defendants*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 6:26-cv-02252-AGM-RMN |

_________________________________/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT STETSON UNIVERSITY'S MOTION TO DISMISS**

Plaintiff Gregory McCormick ("Plaintiff"), by and through undersigned counsel, hereby files this Response in Opposition to Defendant Stetson University's Motion to Dismiss (Doc. 29), in support thereof, states as follows:

## INTRODUCTION

Defendant Stetson University seeks dismissal by isolating allegations from the Complaint, disputing Plaintiff's factual account, and drawing inferences in its own favor. Rule 12(b)(6) does not permit the Court to resolve factual disputes or weigh competing interpretations at the pleading stage.

The Complaint alleges that Plaintiff participated in a Stetson-approved clinical practicum required for his graduate counseling degree and tied to HRSA funding. During that placement, a Halifax employee allegedly assumed supervisory authority despite lacking the required credentials and authorization, and subjected Plaintiff to repeated unwanted physical contact, sexually suggestive remarks, and inappropriate boundary violations. Plaintiff reported the conduct and related supervisory violations to Stetson faculty, administrators, and its Title IX office, but Stetson allegedly failed to investigate or take meaningful protective action. Compl. ¶¶ 20–33, 47–50.

Plaintiff also disclosed his PTSD, panic attacks, and other serious psychiatric symptoms, requested academic flexibility and support, and alleges that Stetson failed to meaningfully address those circumstances before imposing remediation requirements, restricting his clinical training, revoking his HRSA grant, obstructing his appeals, and delaying his graduation. Id. ¶¶ 27, 34–41, 64–80.

These allegations plausibly support Plaintiff's claims under Title IX, the ADA, Section 504, and Florida law. Stetson's disagreement with the allegations and its competing explanations for the challenged conduct do not establish pleading deficiencies. The Motion should be denied. Alternatively, Plaintiff requests leave to amend under Rule 15(a)(2) if the Court identifies any curable deficiency.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint, not the merits of the claims. The Court must accept well-pleaded factual allegations as true and draw reasonable inferences in Plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016).

A complaint survives dismissal when its factual allegations permit a reasonable inference that the defendant is liable for the alleged misconduct. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must consider the allegations as a whole and may not resolve factual disputes, weigh competing interpretations, or determine credibility at this stage. Rules 8(d)(2) and (3) also permit alternative and inconsistent claims.

If the Court identifies a pleading deficiency, leave to amend should be freely granted when justice so requires. Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## ARGUMENT

### I. Count I Adequately States a Claim for Deliberate Indifference Under Title IX.

Stetson relies on *C.W. by & through Doe v. Smith*, 178 F.4th 1278, 1286 (11th Cir. 2026), for the governing Title IX framework. Under *C.W.*, Plaintiff must plausibly allege that Stetson receives federal funding; an appropriate

person had actual knowledge of the harassment; Stetson acted with deliberate indifference to known harassment in its education program or activity; and the harassment was so severe, pervasive, and objectively offensive that it effectively deprived Plaintiff of access to an educational opportunity or benefit. Id. (citing *Davis ex rel. LaShonda D. v. Monroe County Board of Education*, 526 U.S. 629, 633 (1999)). The Complaint plausibly alleges these requirements.

First, the Complaint alleges that Stetson receives federal financial assistance and that Plaintiff received HRSA funding through Stetson tied to successful completion of the required clinical practicum. Compl. ¶¶ 20–21.

Second, Plaintiff alleges that Stetson faculty and administrators received repeated reports identifying Jennings' sexual harassment and unauthorized supervisory conduct, that Plaintiff submitted written reports and a formal appeal, and that he subsequently met with Stetson's Title IX office. Id. ¶¶ 27–33. These allegations support the inference that Stetson personnel responsible for addressing discrimination had actual knowledge of the reported harassment.

Third, Plaintiff alleges that, despite receiving those reports, Stetson failed to initiate a formal Title IX investigation or take meaningful protective action. Instead, Stetson proceeded with a remediation process that allegedly disregarded Plaintiff's complaints and imposed additional academic and practicum consequences. Id. ¶¶ 28–38. These allegations plausibly support

deliberate indifference to reported harassment within a required educational placement.

Fourth, Stetson improperly reduces the alleged harassment to an isolated hug or unspecified comment. The Complaint alleges repeated unwanted physical contact, prolonged hugs and touching, sexually suggestive remarks, coercive conduct, and an attempted inappropriate dual relationship during a required clinical practicum. Id. ¶¶ 20–25, 47–48. Jennings allegedly assumed supervisory authority over Plaintiff despite lacking the required credentials and authorization. Id. ¶¶ 22–25. The alleged conduct must be considered in the context of that supervisory relationship and professional training environment, rather than evaluated incident by incident. As *C.W.* recognizes, the surrounding circumstances, expectations, and relationships inform the severity analysis. 178 F.4th at 1286–87.

Stetson also argues that it lacked sufficient control over Jennings because he was employed by Halifax. But *Davis* focuses on the funding recipient's substantial control over the harasser and the context in which the harassment occurs; it does not make a direct employment relationship an independent prerequisite. 526 U.S. at 644–46. The Complaint alleges that Stetson approved and administered the clinical placement, designated Conway as the intended site supervisor, and required Plaintiff to complete the practicum as part of its graduate counseling program. Compl. ¶¶ 20–23.

Jennings allegedly assumed supervisory authority while Conway was absent, despite not being designated or authorized to supervise Plaintiff. Id. ¶¶ 22–25. These allegations support the inference that the harassment occurred within an educational placement Stetson established and administered, and that Stetson had authority to address the supervisory conditions affecting its students.

Nor does *C.W.* compel dismissal. Although that case involved student-on-student harassment in a public-school setting, this case concerns alleged misconduct by an adult employee who assumed supervisory authority over a graduate student in a required clinical placement. 178 F.4th at 1284–87. The different relationship and professional training context are relevant to evaluating the alleged conduct and the institution's responsibility for responding to it.

Taken together, Plaintiff alleges repeated sexual misconduct in a required clinical placement, actual notice to Stetson, and a failure to investigate or take meaningful protective action after receiving reports. Stetson's arguments ask the Court to resolve the severity, control, and reasonableness issues in its favor. Those issues should not be decided by disregarding the Complaint's allegations and reasonable inferences. Count I should proceed.

**II. Count II Adequately Alleges Retaliation for Plaintiff's Protected Title IX Activity.**

Stetson's retaliation argument improperly characterizes Plaintiff's reports as unrelated administrative complaints while disregarding that Plaintiff expressly reported sexual harassment, invoked Stetson's Title IX process, and thereafter experienced a series of adverse academic actions. The Complaint alleges that Plaintiff reported Jennings' sexual harassment to Stetson faculty and administrators between February 24 and February 28, 2025, and submitted a formal written appeal on February 28 expressly identifying sexual harassment and retaliation. Compl. ¶¶ 27–29. Those reports constitute protected activity under Title IX. *Jackson v. Birmingham Board of Education*, 544 U.S. 167 (2005).

The fact that Plaintiff's reports also addressed unauthorized supervision, professional boundary violations, CACREP standards, and Florida licensure requirements does not strip his sexual harassment complaints of their protected character. The Complaint alleges that Plaintiff reported both the alleged sexual misconduct and the institutional failures that allowed it to occur. Id. ¶¶ 28–29. Stetson cannot defeat the retaliation claim by isolating the additional subjects of those reports while ignoring their express Title IX content.

Nor does the chronology defeat the claim. Plaintiff does not allege that the February 21 removal from the practicum was retaliation for written reports submitted on February 24–28. Rather, the claim rests on the adverse actions that followed his protected activity. The Complaint alleges that Stetson barred Plaintiff from clinical training until Fall 2025, before the PAR Committee had convened; subjected him to a remediation process that disregarded his reports; required him to retake a course he had already passed and drop the practicum; and delayed his graduation by at least one academic year.

Plaintiff further alleges that Stetson obstructed his appeals and later imposed retaliatory grading consequences during the Summer 2025 term. Id. ¶¶ 34–41. These are concrete academic consequences that allegedly followed Plaintiff's protected reports and affected his ability to complete his degree.

Stetson's assertion that Plaintiff failed to allege decision-maker knowledge likewise disregards the pleaded sequence of events. Plaintiff alleges repeated reports to Stetson faculty and administrators, a formal written appeal, a meeting with the Title IX office, and subsequent challenges to the PAR process based on Stetson's alleged disregard of his harassment and retaliation complaints. Id. ¶¶ 27–35. He further alleges that he continued reporting retaliation to Stetson administrators and formally appealed his Summer 2025 grades based on retaliation and discrimination, but that appeal was denied. Id. ¶¶ 37, 40–41. Taken together, these allegations support the

reasonable inference that Stetson personnel involved in the challenged academic and appeal processes were aware of Plaintiff's protected complaints.

At this stage, Plaintiff need not prove the knowledge or motive of every individual involved in each decision. The question under *Twombly* and *Iqbal* is whether the pleaded facts support a reasonable inference of liability. *Twombly*, 550 U.S. at 556; *Iqbal*, 556 U.S. at 678. By alleging protected Title IX activity, subsequent adverse academic actions, and facts supporting an inference of institutional knowledge and retaliatory causation, Plaintiff has adequately stated his retaliation claim. Count II should proceed.

**III. Counts III and IV Adequately Allege Disability Discrimination, Failure to Accommodate, and Retaliation Under Section 504 and the ADA.**

Stetson characterizes Plaintiff's disability disclosures and request for academic flexibility and support as an attempt to obtain retroactive academic leniency. That characterization overlooks the allegations as a whole. Plaintiff alleges that he disclosed his PTSD, panic attacks, passive suicidal ideation, and ongoing psychiatric treatment; requested academic flexibility and support; and explained the effect his condition was having on his ability to navigate the practicum process. Compl. ¶¶ 64–80. Plaintiff further alleges that Stetson proceeded with remediation and additional academic consequences without

meaningfully addressing those disability-related circumstances. Id. ¶¶ 34–41, 68, 77.

**A. Plaintiff plausibly alleges disability discrimination and failure to accommodate.**

Title III of the ADA prohibits disability discrimination in the services of private postgraduate schools and requires reasonable modifications to policies, practices, or procedures when necessary to provide access to those services. 42 U.S.C. §§ 12181(7)(J), 12182(a), (b)(2)(A)(ii). Section 504 similarly prohibits federally funded programs from excluding or discriminating against otherwise qualified individuals because of disability. 29 U.S.C. § 794(a). In the postsecondary context, the relevant inquiry includes whether a student can meet the program's academic and technical requirements with or without reasonable accommodations. 34 C.F.R. § 104.3(l)(3); *Williams v. Bd. of Regents of the Univ. Sys. of Ga.*, No. 23-12878, slip op. at 24–26 (11th Cir. Sept. 4, 2026).

Plaintiff alleges that he was enrolled in Stetson's graduate counseling program, had completed coursework, and was pursuing the required clinical practicum when he disclosed his disability-related circumstances and requested support. Compl. ¶¶ 20–25, 64–80. He does not allege that he sought to avoid the program's essential requirements. Rather, he alleges that Stetson failed to meaningfully consider academic flexibility and support in light of his

disclosed condition before proceeding with additional remediation and academic consequences. Id. ¶¶ 34–41, 68, 77.

Stetson's reliance on *Goldberg v. Florida International University Board of Trustees*, No. 20-11462, 2020 WL 7703136 (11th Cir. Dec. 29, 2020), and *J.A.M. v. Nova Southeastern University, Inc.*, 646 F. App'x 921, 924–27 (11th Cir. 2016) (per curiam) (unpublished), does not require dismissal. Those cases involved students whose academic and clinical difficulties persisted despite accommodations and opportunities to satisfy their programs' requirements. *J.A.M.*, in particular, involved repeated academic failures, psychiatric hospitalizations, and unsuccessful opportunities to complete the program. 646 F. App'x at 922–25.

Plaintiff alleges a materially different context involving disputed practicum supervision, reports of misconduct at the clinical placement, and disability-related disclosures followed by additional institutional action. Compl. ¶¶ 20–41, 64–80. Nor does *Williams* resolve this case: the Eleventh Circuit reviewed an evidentiary record and affirmed summary judgment based on the record concerning clinical performance, patient safety, and the institution's stated reasons for its decisions. *Williams*, slip op. at 24–26. Here, the Court is reviewing the sufficiency of the pleadings, not weighing competing evidence.

**B. Plaintiff plausibly alleges retaliation for protected disability-related activity.**

The ADA prohibits retaliation against an individual for opposing disability discrimination or exercising rights protected by the statute. 42 U.S.C. § 12203(a). Section 504's implementing regulations likewise prohibit intimidation, threats, coercion, or discrimination against an individual for exercising protected rights. 34 C.F.R. §§ 104.61, 100.7(e). A retaliation claim requires protected activity, an adverse action, and a causal connection between them. *Shotz v. City of Plantation*, 344 F.3d 1161, 1180–81 (11th Cir. 2003).

Plaintiff alleges that he requested disability-related academic flexibility and support and that Stetson thereafter subjected him to adverse academic and practicum actions, including the PAR remediation process, required coursework retaking, restrictions on practicum progression, obstruction of his appeal, and adverse academic consequences that delayed his graduation. Compl. ¶¶ 34–41, 64–80.

The Complaint further alleges that the PAR process expressly addressed his practicum dismissal, site-supervisor feedback, role as a trainee, receptivity to supervision, and the balancing of his physical and mental health needs. Id. ¶¶ 34–41. These allegations support an inference that Stetson knew of Plaintiff's disability-related circumstances during the challenged process and connect those circumstances to the subsequent institutional actions.

At the pleading stage, Plaintiff need not establish the ultimate causal connection through evidence. Considered together and in Plaintiff's favor, the allegations plausibly state claims for disability discrimination, failure to accommodate, and retaliation under the ADA and Section 504. Stetson's arguments concerning Plaintiff's qualifications, the nature of his request, and the reasons for its academic decisions present issues that should not be resolved against Plaintiff on a motion to dismiss.

**IV. Count X Adequately Alleges Outrageous Conduct by Stetson Supporting a Claim for Intentional Infliction of Emotional Distress.**

Under Florida law, a claim for intentional infliction of emotional distress requires allegations that: "(1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous; (3) the conduct caused emotional distress; and (4) the emotional distress was severe." *Hart v. United States*, 894 F.2d 1539, 1548 (11th Cir. 1990); see also *Metropolitan Life Insurance Co. v. McCarson*, 467 So. 2d 277, 278 (Fla. 1985). Conduct is outrageous when it is so extreme in character and degree that it exceeds all possible bounds of decency and is regarded as atrocious and utterly intolerable in a civilized community. *McCarson*, 467 So. 2d at 278–79. Although demanding, this standard requires consideration of the alleged conduct in its full factual context.

Stetson characterizes its conduct as ordinary academic administration and a disagreement over Plaintiff's performance. The Complaint alleges

considerably more. Plaintiff alleges that he repeatedly reported sexual harassment and unauthorized supervision at a required clinical placement, disclosed serious psychiatric symptoms, and sought institutional assistance. Compl. ¶¶ 27–33, 43–45, 64–80.

Despite those reports, Stetson allegedly failed to initiate a Title IX investigation or provide meaningful protection, barred Plaintiff from clinical training, and subjected him to a remediation process that disregarded his complaints. Id. ¶¶ 31–36. The alleged conduct continued through required coursework retaking, removal from the practicum, delayed graduation, obstruction of appeal procedures, threatened dismissal over an administrative processing delay, and allegedly disproportionate grading consequences. Id. ¶¶ 36–41.

These allegations support more than a claim based on an isolated academic decision or unfavorable evaluation. Plaintiff alleges that Stetson received repeated reports of sexual harassment and serious professional violations, knew of his significant psychiatric symptoms, and nevertheless failed to address those reports before subjecting him to a continuing series of consequential academic and administrative actions.

The allegations also support an inference of intentional or reckless conduct: Stetson allegedly proceeded with the challenged remediation and

academic actions despite repeated notice of Plaintiff's complaints and circumstances. Id. ¶¶ 27–41.

The Complaint further alleges that Plaintiff experienced exacerbated PTSD, panic attacks, and a psychiatric crisis requiring intervention by his treating psychiatrist. Id. ¶¶ 43–45. These allegations address the severe emotional distress element identified in *Hart*. Plaintiff also alleges related economic, academic, and professional injuries, including lost funding, delayed graduation, treatment expenses, and lost opportunities. Id. ¶ 44. Those additional consequences provide context for the alleged course of conduct but do not replace the pleaded emotional distress.

Stetson's reliance on *Mika v. Rollins College*, No. 6:25-CV-1110-JSS-RMN, 2026 WL 679128 (M.D. Fla. March 11, 2026), does not establish that conduct arising in an academic setting is categorically beyond the reach of an IIED claim. The issue is whether the particular conduct alleged, considered as a whole, satisfies Florida's demanding standard. Plaintiff alleges that Stetson knowingly disregarded repeated reports of harassment and serious psychiatric distress and then subjected him to a continuing course of academic and administrative actions.

The Court should not resolve that claim by isolating individual decisions from the circumstances in which they allegedly occurred. Count X should therefore survive dismissal.

**V. Count XI Adequately Identifies the Contractual Relationship and the Institutional Obligations Stetson Allegedly Breached.**

Stetson acknowledges that the relationship between a private university and its student may be contractual, but argues that Plaintiff has not adequately identified the obligations giving rise to the alleged breach. The Complaint alleges more than a generalized expectation of a satisfactory education. Plaintiff alleges that he enrolled in Stetson's graduate counseling program, was required to complete a clinical practicum approved and arranged through the university, received an HRSA grant tied to that placement, and was subject to Stetson's academic, practicum, remediation, and appeal procedures. Compl. ¶¶ 20–23, 34–38. The Complaint also identifies institutional materials and standards underlying the alleged contractual obligations. Id. ¶¶ 136, 140.

Plaintiff alleges that Stetson breached those obligations by permitting the required clinical training to proceed under an allegedly unauthorized supervisory arrangement, failing to address the resulting complaints, imposing additional remediation and course requirements, and obstructing his efforts to appeal the resulting decisions. Id. ¶¶ 22–23, 28–38. These allegations identify the contractual relationship, the institutional obligations at issue, and the conduct alleged to constitute breach.

Stetson's demand that Plaintiff quote each contractual provision verbatim imposes a level of specificity beyond Rule 8's pleading standard. Although the governing documents and provisions may be addressed with greater precision as the case proceeds, the Complaint identifies the educational relationship, the required clinical placement, the procedures governing academic remediation and review, and the alleged departures from those procedures. Read in context, those allegations provide notice of the contractual claim.

Stetson also objects that Count XI does not incorporate paragraphs 1–45. That objection does not establish that the Complaint lacks factual basis; the allegations concerning enrollment, the practicum, supervision, remediation, and appeals appear in the pleading. Nevertheless, if the Court determines that the contractual obligations or their incorporation must be pleaded with greater specificity, Plaintiff should be permitted to amend rather than suffer dismissal with prejudice. Count XI should proceed.

## VI. Stetson Has Not Established That the Complaint Is an Impermissible Shotgun Pleading.

Stetson's shotgun-pleading argument largely repackages its challenges to individual counts. The Complaint identifies the parties, describes the events giving rise to the dispute, separates the causes of action into distinct counts, and identifies the legal basis for each claim. The claims arise from overlapping

events, but each addresses a distinct aspect of Stetson's alleged conduct: Counts I and II concern its response to reports of sexual harassment and the alleged retaliation that followed; Counts III and IV concern its treatment of Plaintiff after his disability disclosures and request for support; Count X concerns the alleged institutional conduct and resulting emotional harm; and Count XI concerns the obligations arising from the university-student relationship. Factual overlap does not, by itself, make a complaint unintelligible.

Stetson's objections to incorporation and the organization of particular counts do not warrant dismissal of the entire action. Rule 10(c) permits incorporation by reference, and any deficiency in identifying the paragraphs supporting a particular count can be corrected through amendment. Likewise, Counts III and IV may assert distinct accommodation and retaliation theories without rendering the claims unintelligible or requiring dismissal of both counts.

Stetson also objects that Count X refers to Defendants collectively. But the Complaint identifies Stetson's own alleged conduct, including its receipt of Plaintiff's reports, failure to initiate an investigation, administration of the PAR process, remediation decisions, handling of Plaintiff's appeal, and subsequent grading actions. Compl. ¶¶ 27–41. The factual basis for the IIED

claim against Stetson is therefore discernible from the allegations directed to its conduct.

The shotgun-pleading doctrine is intended to ensure that defendants receive fair notice of the claims against them and that the Court can determine which allegations support each cause of action. Here, Stetson has identified the specific counts and allegations it challenges and has addressed the legal theories underlying those claims. Its objections identify, at most, discrete issues concerning incorporation, organization, or the separation of theories - not a pleading so unclear that the claims cannot be addressed.

Moreover, dismissal with prejudice is not appropriate where a pleading defect can be corrected through amendment. Rule 15(a)(2) directs that leave to amend be freely given when justice so requires. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Therefore, even if the Court identifies a deficiency in the incorporation or organization of a particular count, Plaintiff should be permitted to correct it rather than suffer dismissal of otherwise viable claims.

**VII. Stetson's Remedies Arguments Do Not Warrant Dismissal of the Underlying Claims.**

Stetson's final arguments concern the availability of particular remedies, not whether Plaintiff has adequately stated claims under Title IX, Section 504, or the ADA. Plaintiff does not dispute that Title III of the ADA does not authorize a private plaintiff to recover compensatory damages or that

*Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212 (2022), precludes recovery of emotional-distress damages under Spending Clause statutes such as Title IX and Section 504.

Those remedial limitations do not extinguish otherwise viable statutory claims or foreclose other forms of relief authorized by law. The sufficiency of Plaintiff's claims must therefore be evaluated separately from the availability of particular categories of damages.

Nor does Stetson establish that injunctive relief must be dismissed. Plaintiff alleges ongoing academic and professional consequences, delayed progress toward completing his degree, and continuing injury arising from the challenged conduct. Compl. ¶¶ 34–45. The availability and scope of appropriate equitable relief can be addressed separately; the remedies arguments provide no basis to dismiss Counts I through IV.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant Stetson's Motion to Dismiss in its entirety. Alternatively, should the Court determine that any challenged count is insufficiently pleaded, Plaintiff respectfully requests leave to amend pursuant to Federal Rule of Civil Procedure 15(a)(2) before dismissal with prejudice is considered.

Respectfully Submitted,
**LLG NATIONAL LAW GROUP**



Robert S. Mactavish, Esquire
Florida Bar Number 0596388
Phoenix Corporate Tower
3003 N. Central Avenue
Suite 685
Phoenix, AZ 85012
P: 575-517-6542
robert.mactavish@llgnational.com
*Attorney for Plaintiff*

## **CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5(b)(3), this document is being filed electronically and service shall be through the Court's transmission facilities on all persons appearing before this Court.



Robert S. Mactavish

## **Certification Under Penalty of Perjury That Artificial Intelligence Was Used in the Preparation of This Filing**

I have reviewed the Standing Order Requiring Disclosure of the use of artificial intelligence. Artificial intelligence was used in the preparation of this filing in the following way: our firm's paralegal who helped write the initial draft of this pleading used Grammarly. Although it is AI, it is not generative AI and only

deals with grammar, spelling, sentence structure, etc. Grammarly does not generate content. However, under penalty of perjury, I certify that before filing, I personally reviewed Rule 11 of the Federal Rules of Civil Procedure and I personally read every case. I understand that if a case upon which I rely does not exist or does not reasonably stand for the cited proposition, the Court may treat this as a violation of Rule 11 of the Federal Rules of Civil Procedure. I have reviewed Rule 11 of the Federal Rules of Civil Procedure and I understand that this rule applies equally to counsel and unrepresented parties, that as the person signing this filing, I am the person who will be held responsible for its contents even if it was prepared by someone else, and I am familiar with the sanctions available for violations of Rule 11. If this certification is made by counsel, I further understand that citation to a case that either does not exist or does not reasonably stand for the cited proposition may be treated as a violation of my oath of candor toward the tribunal and a basis on which my admission to practice in the Middle District of Florida could be revoked or suspended. Further, whether I represent myself or I am an attorney representing a client, I understand that by making this certification under penalty of perjury I could be referred for criminal prosecution if the statements I make here are false.



Robert S. Mactavish